JULIA SULLIVAN FRANKS, APPELLANT, V. JEREMIAH HORRI-
GAN ET AL., APPELLEES.

FILED JUNE 6, 1930. No. 27364.

*James T. English, Crofoot, Fraser, Connolly & Stryker*
and *F. S. Berry,* for appellant.

*George M. Harrington, M. F. Harrington* and *C. H.
Hendrickson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON,
EBERLY and DAY, JJ.

GOOD, J.

Plaintiff brought this action to enforce specific perform-
ance of an oral agreement, wherein and whereby Mary
Horrigan agreed to adopt plaintiff and bestow upon her
the same right of inheritance as if she had been a natural
daughter, born in lawful wedlock. To the petition general

demurrers were sustained. Plaintiff elected to plead no further. Judgment of dismissal was entered. Plaintiff has appealed. We are required to determine whether the facts set forth in the petition are sufficient to constitute a cause of action.

The petition informs us that plaintiff was born in New York City in 1886 to Anna Cannon, and from the date of her birth until September 30, 1890, she was under the care, custody and control of the New York Foundling Hospital, having been placed with said institution by her mother for adoption, and that on the last mentioned date, when plaintiff was four years of age, the said institution, through its authorized representatives, entered into an oral agreement with Mary Horrigan which provided that, in consideration of the placing of plaintiff with her and the relinquishment by said institution of the care, custody and control of and right to plaintiff, the said Mary Horrigan was "to keep, treat and maintain plaintiff in the same manner and extent as if she were her own natural and legitimate daughter and to adopt plaintiff and to give to her the same legal status and rights of inheritance as a natural daughter would have, born of lawful wedlock." Then follow allegations of full performance of the contract, the marriage of Mary Horrigan to Eugene Sullivan, the death of both Eugene and Mary Sullivan, and that the latter died intestate and without issue born to her. The action was against the administrator of the estate of Mary Sullivan, deceased, and also against all the heirs at law of said decedent.

By their demurrers defendants admit the existence of the oral agreement, as pleaded, and full performance of its terms except the neglect of Mary Horrigan Sullivan to adopt plaintiff and give to her the same legal status and rights of inheritance as a natural daughter would have, born of lawful wedlock. They contend, however, that the petition does not state a cause of action for the following reasons: (a) Because it is impossible to enforce the specific agreement to adopt; that adoption of children was unknown to the common law and is solely a creature of

statute, and that our statute permits the adoption of minor children only and upon conditions prescribed by the adoption statute; that plaintiff is no longer a minor, and that it is impossible to comply with other conditions of the adoption statute; (b) because the adoption contract was made in Iowa and is governed by the laws of that state and should be construed with reference to the laws thereof; (c) because the contract does not relate to the giving or devising of property and is too indefinite to be susceptible of enforcement.

It is no doubt true that formal legal adoption of plaintiff is now impossible. Plaintiff concedes this to be true, and further concedes that, not having been, in fact, adopted, and not being a blood relative of Mary Sullivan, she is not a legal heir and cannot take by inheritance any of the estate of Mary Sullivan.

Whether the contract is, under the law of Iowa, a nullity cannot now be determined. If the statutes of a sister state are relied upon to afford other or different relief than those of this state, the laws of such state must be pleaded and proved, unless admitted. In the absence of such pleading and proof, or admission, the statutes of a sister state will be presumed to be the same as those of this state. The statutes of Iowa are not pleaded in this cause, and, if the applicable statutes of that state are different from those of this state, that fact cannot be considered on this appeal. The determination of these points, adverse to plaintiff, however, is not conclusive of plaintiff's right to recover.

Defendants' principal contention is that the contract does not provide specifically for the giving, bequeathing or devising of any property, and that if it did it is too indefinite, as to the property or amount thereof, to be enforceable. Contracts of this general character have been frequently before this court. The following quotations and excerpts from some of the authorities will suffice to illustrate the rules established by this court.

In *Pemberton v. Heirs of Pemberton*, 76 Neb. 669, it was held:

"A contract in writing for the adoption of a child, al-

though ineffective as a legal, statutory adoption, may upon a proper showing be enforced in equity.

"A written contract of adoption which contains a condition binding the foster-parents to make the child 'an equal heir to his part of our estate the same as one of our children' may upon a proper showing be specifically enforced against the estate of the deceased foster-parent, who has died intestate."

True, the contract in that case was in writing, but, under the frequent holdings of this court, an oral contract, if there has been such part performance as to take the case out of the statute of frauds, is as enforceable, in equity, as though it had been in writing. In the above cited case the written contract, among other things, provided: "We do further agree that at our death the said child shall be an equal heir to his portion of our estate the same as one of our children." In the opinion, after citing and discussing authorities from other jurisdictions, it was said (page 678): "As against these authorities it is of no avail to suggest that, notwithstanding the existence of the contract sued upon, the deceased could have disposed of his property as he pleased during his lifetime, by deed, devise, or otherwise. It is true that he might have done so, and also true that he did not. * * * And we think there is no reason in equity and conscience why a decree of specific performance of this contract should not be granted."

In *Parks v. Burney*, 103 Neb. 572, in an opinion by Sedgwick, J., it was held:

"An agreement to take a six year old boy 'as a son' and give him 'a child's share of my property' is sufficiently definite as to what the boy is to receive in case he performs the contract on his part. The fact that a child may be disinherited by will, or that it is uncertain how many children there will be to inherit the property, does not render such contract void for uncertainty.

"If such contract is definite, and is clearly proved, and substantial performance is proved by clear and unequivocal evidence, it has the same force as if written."

In the body of the opinion it was said (page 575): "It

is seriously contended that this evidence as to what he (plaintiff) should have is too indefinite to amount to a contract. It is urged that a child has no share in the parents' property if the parents see fit to dispose of the property otherwise, and that if Smith and his wife were then young people it is very indefinite and uncertain as to what any particular child's share would be if there should be other children. If, however, we apply the rule of construing this contract as the parties themselves then evidently understood it, and intended, these objections are not well taken. If the agreement to treat this boy as his son and give him a child's share of the property would not prevent the Smiths from disposing of their property or a part thereof to others by will, it at least was equivalent to a contract to make him an heir, and, as such, he would inherit with other heirs, if any, such property as Smith owned, undisposed of, at his death."

*Tuttle v. Winchell*, 104 Neb. 750, presents a situation very similar to that in the case under consideration. In that case it was held: "A parol agreement of adoption, whereby a parent surrenders a child to others upon their promise to adopt, rear and educate it as their own, and to give it the same right of inheritance as a natural child, but which is not consummated by a statutory adoption, will, if otherwise fully performed, be enforced in case the adoptive parents die intestate, by decreeing to the plaintiff the same share in their property to which he would have been entitled if the agreement to adopt had been fulfilled." In the course of the opinion it was said (page 758): "If the promise to adopt the plaintiff had been consummated by formal adoption under the statute, it would have carried with it a child's right of inheritance in the property of Mr. and Mrs. Tuttle. They made no will, and their property was left to descend by operation of law. Equity considers that done which should have been done, and, since the plaintiff's right to the share to which he would have been entitled if legally adopted can be recognized without violating any expressed intention of the

deceased to the contrary, the decree awarding him that share was just and equitable."

In *Wiseman v. Guernsey*, 107 Neb. 647, it was held: "The only manner by which the right of inheritance can be conferred by an adopting parent upon a child is by a legal adoption, conducted in substantial compliance with all the essential requirements of the statute.

"Even where there is no legal adoption, an oral contract to adopt a child and make it an heir, when saved from the operation of the statute of frauds by part performance, may be enforced in equity by awarding to the child an equivalent of such inheritance."

Were the question an open one in this state, the writer would feel disposed to take a different view than is expressed in the authorities cited. But the question has been so frequently determined and so firmly imbedded in our jurisprudence that it is not deemed wise to overthrow the rule so long and so firmly established.

Application of the rules laid down in the cited cases requires us to hold that the petition stated a cause of action. The demurrers should have been overruled.

The judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.