## Carter et al. v. Capshaw.

(Decided Feb. 28, 1933.)

(As Modified on Denial of Rehearing June 29, 1933.)

484

JOHN E. RICHARDSON and H. E. SKINNER for appellants.

J. C. CARTER, Jr. and HEBRON LAWRENCE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

George Jackson, a resident of Monroe county, Ky., in April, 1928, died intestate, and without issue, leaving surviving him a widow, Mary Jackson, and as heir at law, his next of kin of the degree of cousins. At his death he was the owner of valuable real and personal property of the value of a little more than $25,000. His widow, Mary Jackson, qualified as administratrix of his estate, and filed this action in the Monroe circuit court to settle and distribute his estate between her and his heirs at law. Jesse Capshaw and Mossie Capshaw, his wife, were made defendants. She made these allegations as to them: "He claims, or is setting up a claim, to be an adopted son of decedent, George Jackson, * * * and his wife has no other interest in the action, except as his wife." A number of the defendants were residents of Kentucky; the majority of them were nonresidents, and absent from the state of Kentucky. Summons was served on the residents, and a warning order was issued for the nonresident defendants. Jesse Capshaw filed an answer, counterclaim, and cross-petition. In it, we find these allegations:

> "During the minority of this defendant, the decedent, George W. Jackson, and his wife, Jane Jackson, by a process of law, adopted this defendant and that he is now a legally adopted child of the decedent, George W. Jackson, and is entitled to inherit the entire estate of the decedent, subject to the rights of his widow, the plaintiff herein, and pleads and relies upon same as the complete bar to the defendants' recovery herein, especially as to the recovery of this defendant, who, by reason of said adoption by decedent, George W. Jackson, is a sole heir at law of decedent, George W. Jackson, subject to the interest of the plaintiff herein."

His answer was made a cross-petition against all of his codefendants, with a prayer that he be adjudged the sole heir of George W. Jackson as against the next of kin of Jackson. No summons was issued and no warning order was ordered on his cross-petition. Summons was issued on the residents, and a warning order attorney was appointed for the non-resident defendants on the petition of Mary Jackson to settle the estate. He filed a report stating he was unable to correspond with the nonresident defendants or any of them, and "had carefully examined all the papers of the case and

finds no defense he can affirmatively make for them, or either of them." Sherman Jackson and others filed demurrer, especially "to answer, counterclaimed cross-petition of Jesse Capshaw, on the grounds that the court had no jurisdiction of the subject-matter asserted in his answer in the cross-petition." The court sustained the special demurrer, with leave to Jesse Capshaw to amend his answer and cross-petition. Thereupon, Capshaw prepared and had served upon the attorney of the resident defendants, J. M. Jackson, who was only appointed attorney for the nonresidents, on the petition to settle the estate, a notice to the effect that he would apply to the court to supply the record showing his adoption by George Jackson and Jane Jackson. On the filing of the notice, showing it was executed by delivering a copy to Mr. Sherman Jackson, B. F. Denham, attorney for Nack Cherry, John Cherry, and Kate Eads, and to J. M. Jackson, "attorney for the within named non-resident defendants," the court appointed a special commissioner to supply the judgment of adoption. On the hearing of evidence, the special commissioner filed his report in which he set out a very accurately and skillfully drawn order which he reported was a reproduction of the destroyed order, showing the adoption of Jesse Capshaw.

A judgment selling the land was entered. Later, in February, 1930, an order was entered reciting "that Jesse Capshaw had filed a petition to be made a party in which he alleged that he was the adopted son of George W. Jackson and Jane Jackson, and that a judgment of adoption had theretofore been entered in this court which had been destroyed by fire and that thereafter he had filed an order and entered a motion to supply the judgment; that a commissioner had been appointed to hear the evidence and had heard the evidence and made a report showing the legal adoption of George Jackson and Jane Jackson of Jesse Capshaw as the heir of George Jackson." Thereupon, an order, declaring Capshaw had been adopted by George Jackson, was entered, directing the master commissioner to pay to Lawrence & Carter, a firm composed of Hebron Lawrence and J. C. Carter, Jr., attorneys for Jesse Capshaw, "the remainder now in his hands, *they derived from the sale of the lands in the above styled actions,* less any cost now owing, said net remainder now in his hands amounting to $2,714.45."

It will be noticed that after the special demurrer was sustained to the answer, counterclaim, and cross-petition of Capshaw, he did not file an amendment, but proceeded to give notice to supply the alleged judgment of adoption. The notice was executed on two defendants in person, and on Mr. Denham, an attorney for three other defendants, and also on the warning order attorney, who was appointed on the original petition, but who had not been appointed on his cross-petition. The appointed attorney for nonresidents on the original petition for the nonresident defendants, and the issuance of summons on the original petition, did not dispense with the requirement of sections 90 and 97, Civil Code of Practice. These sections of the Code apply to cross-petitions and summons where the defendants are residents of this state, or a warning order if they are nonresidents, is necessary upon a cross-petition by a defendant against a codefendant. Horine v. Moore, 14 B. Mon. 311. Section 630 of the Civil Code of Practice authorizes the serving of a notice upon an attorney appointed to defend a person constructively summoned and not appearing. The defendants on the cross-petition of Capshaw had not been constructively summoned at the time of the serving of the notice on J. M. Jackson. He had not been appointed as warning order attorney on the cross-petition of Jesse Capshaw at the time notice was served on him for the purpose of supplying the lost judgment. Until he was appointed as attorney for the nonresidents on the cross-petition, of course, he was without authority to receive notice or otherwise represent the nonresident defendants on the cross-petition of Jesse Capshaw. The cross-petition of Jesse Capshaw against the next of kin, named in the petition of the administratrix to settle the estate, was really an independent or an original suit as to these heirs, against whom it was made a cross-petition, and not only was a summons or warning order required before a judgment could be rendered thereon, affecting the defendants on the cross-petition, but a summons or warning order was indispensable, the same as if it were an original action. Allen v. Sweeney, 185 Ky. 94, 213 S. W. 217; Howard v. Jones, 147 Ky. 303, 143 S. W. 1058.

Without process on the cross-petition, against the codefendants against whom it was made a cross-peti-

tion, the court was without jurisdiction to render judgment adjudging to Capshaw's attorneys $2,714.45, a portion of the estate, or to judge him the adopted heir of George W. Jackson. The mere statement that a judgment rendered on a petition or cross-petition, without process on the defendants, against whom it is filed, is void, needs no citation of authority to sustain it.

A large number of persons claim to be the heirs of George W. Jackson, and many of those named in the original petition were sued as unknown heirs of George W. Jackson, and nonresidents of the state of Kentucky. On the 3d day of April, 1930, they filed in the circuit court clerk's office "a motion for new trial, joint and separate answer, counterclaim, cross-petition and petition making parties defendants," which process was issued and served on J. C. Carter, Jr., Hebron Lawrence, and Jesse Capshaw. On the convening of court, at its April term, 1930, this motion for retrial on the pleading denominated answer, counterclaim, cross-petition, and petition, making parties defendants, was filed in open court. Carter, Lawrence, and Capshaw entered a motion to strike each and every paragrpah thereof, and also demurred especially thereto. In the demurrer it was set forth:

> "The matter set out in the pleading had been finally adjudicated by this court and a judgment is now on record in said court, and the defendants' pleadings failed to set out any cause for vacating said judgment or modifying the same."

The court sustained the motion to file the answer, counterclaim, etc., of the nonresident defendants, and overruled the motion to strike and the special demurrer of Capshaw, Lawrence, and Carter. Thereupon, Capshaw filed a bond, and it is stipulated in the order of court, as required by section 410, Civil Code of Practice, with H. B. Capshaw, Hebron Lawrence, J. C. Carter, Jr., B. F. Denham, as sureties for the $2,714.45, theretofore under an order paid to Lawrence & Carter as attorneys for Jesse Capshaw, which bond was accepted and approved by the court, and upon the execution of the bond, the cause was dismissed as to the defendants Hebron Lawrence and J. C. Carter, Jr. The order directing the paying of the money to Lawrence & Carter was entered on the 1st day of February, 1930, at a special term of the court. An order permitting the

execution and approval of the bond was entered on the 14th day of August, at the regular August term, 1930.

Section 410 Civil Code provides that before a judgment is rendered against a defendant constructively summoned, and who had not appeared, a bond should be executed with good surety approved by the court to the effect that if the defendants shall procure a vacation or modification of the judgment, the person in whose favor it was rendered shall restore to the defendant any property or money obtained under such judgment, restoration of which shall be adjudged. The order having been entered prior to the execution of the bond, its execution did not meet the requirements of section 410, as the expressed requirement of the Code is the bond must be executed *before* the rendition of the judgment which was not shown in this case, directing the $2,714.45 paid to Lawrence & Carter. Lawrence & Carter were proper parties to the procedure to determine the right of Jesse Capshaw as adopted son to receive of the estate through Capshaw's claim of adoption in so far as the $2,714.45 was involved. Just why they were dismissed by the court at this stage of the procedure does not appear, and we are not able to perceive the reason for such order of dismissal.

This brings us to the vital question in this case. Was Jesse Capshaw adopted by George W. Jackson?

An agreement by a person to make another, not related to him, his heir, is against the policy of the common law, and where the procedure is prescribed by the statute, authorizing the adoption of a legal heir, has not been followed. Such an agreement will not be enforced nor will an action lie for its breach. Davis v. Jones' Adm'r, 94 Ky. 320, 22 S. W. 331, 15 Ky. Law Rep. 89, 42 Am. St. Rep. 360. The legal act of adoption is purely statutory, and the statute authorizing the adoption must be strictly complied with. Villier v. Watson's Adm'x, 168 Ky. 631, 182 S. W. 869, L. R. A. 1918A, 820. No element of estoppel can arise in adoption proceedings for the purpose of inheriting. Greene v. Fitzpatrick, 220 Ky. 590, 295 S. W. 896.

To establish a destroyed judgment, the burden of proof is upon the party claiming under it and the evidence to establish it must be clear and convincing. Jesse Capshaw, in his affidavit filed in support of his motion

to supply the judgment, claims that in 1882 or 1883, George Jackson and Jane Jackson, by written petition, requested a judgment of adoption which was rendered and entered by the proper judgment of the Monroe circuit court.

Section 2071, Ky. Stats., reads:

"Any person twenty-one years of age, may, by petition filed in the circuit court of the county of his residence, state, in substance, that he is desirous of adopting a person, and making him capable of inheriting as heir-at-law of such petitioner; and said court shall have authority to make an order declaring such person heir-at-law of such petitioner, and as such, capable of inheriting as though such person were the child of such petitioner; but no such order shall be made if the petitioner be a married man or woman, unless the husband or wife join in the petition."

This section of the statute was in force in the years 1882 and 1883.

It is admitted by Jesse Capshaw that at the time he claims he was adopted, George Jackson was a married man, living with his wife, Jane Jackson, and he asserts that they filed a petition to procure his adoption under the statute then in force. His own statement, as shown in his affidavit filed in support of a motion to have the judgment of adoption supplied, shows that he recognized the effect of section 2071 as manifested by this language:

"No such order shall be made if the petitioner be a married man or woman, unless the husband or wife join in the petition."

In Helm v. Goin, 227 Ky. 773, 14 S. W. (2d) 183, 185, when considering this provision of the statute, we said:

"Section 2071, Kentucky Statutes, provides how a person may adopt another as his heir at law, and it is well settled in this state that, in the absence of a compliance with this statute, the person treated as a child cannot take as an heir at law, but that the statute of descent and distribution controls."

Willoughby v. Motley, 83 Ky. 297; Davis v. Jones' Adm'r, 94 Ky. 320, 22 S. W. 331, 15 Ky. Law Rep. 89, 42 Am. St. Rep. 360.

With this view of the statute and its constructions as we have given it in these cases, we shall now examine the evidence and determine not only whether a judgment of adoption was entered, but if it was entered was the statute strictly complied with at the time of its entry? In behalf of Capshaw, Dr. Ray and others claim they heard George Jackson at different times and on different occasions say that "Jesse Capshaw was his adopted son," or "that he had adopted him," or other expressions of like import. Under the rule as stated by this court in Helm v. Goin et al., Willoughby v. Motley, and Davis v. Jones' Adm'r, supra, these declarations of Jackson, if admitted to be correct and undisputed, and even if Capshaw had been treated as his child, he cannot take as an heir at law of Jackson, for the statute of descent and distribution controls, unless there was a valid judgment entered in strict conformity with section 2071 on a petition signed by both George W. Jackson and Jane Jackson.

The testimony of Ammon Davis and Mrs. Ammon Davis, excluding the declaration of George W. Jackson to Dr. Ray and others, is the only evidence offered to show, or as tending to show the adoption of Jesse Capshaw by George W. Jackson. In substance, Ammon Davis testified that the father and mother of Jesse Capshaw were dead, and Nancy Hailey carried Jesse Capshaw to the home of George Jackson and Jane Jackson and wanted to give the boy to them. The boy lived there about two years from the time he was first carried by her to their home, and that Jackson and his wife liked him and decided to adopt him, and that he, Ammon Davis, and George Jackson went to town, and when they arrived, they "went to see Uncle Smith Maxey, and he said he had to have two witnesses and we went out in town and got two witnesses, George Moore and Lindsay Davis for witnesses. Circuit court was in session at the time and they got it fixed up that day; that Smith Maxey, a lawyer, wrote it. The judge read it and then handed it back to the clerk, and he read it to them. There weren't nothing going on (in court that day) except the adoption." Lindsay Davis and George Moore testified, but he stated that he did not remember whether they had a jury or not. He was asked these questions, and answered as follows:

"Q. Were you close when they read the judgment? A. I was outside the bar.

"Q. Tell the court whether those witnesses testified to the jury. A. They testified about his not having any kin in this county.

"Q. That is not my question; I am asking you if those witnesses testified before a jury. A. I don't know, court was going on.

"Q. You said they testified, didn't you? A. Yes, they testified, they were inside of the bar and I was on the outside. * * *

"Q. You heard what was done? A. I heard him adopt him as his heir.

"Q. You heard the judge read the judgment? A. Yes, sir.

"Q. Now tell the court one thing that was in that judgment. A. He just read it off, this here makes him the same as their own child.

"Q. That is not what I asked you: Tell one thing the judgment recited. A. I told you it said it makes him like their own child.

"Q. Do you remember a single thing that the judgment said? A. I remember that George Moore said that he didn't have any kin people in this county.

"Q. Did the judgment recite that Jesse Capshaw didn't have any kin people in this country? A. Yes, and that he was adopted to George Jackson and Jane Jackson.

"Q. What else? A. Told it was fixed right. I ain't no lawyer and I couldn't tell what was said.

"Q. What else did the judgment recite? A. Just that he wanted it fixed right.

"Q. Do you know whether George Jackson and his wife were both parties to that judgment from the reading of it that day? A. I couldn't tell. George was, but *Jane weren't there that day.*" (Italics ours.)

The testimony of this witness is sufficient to convince a disinterested mind that if he witnessed the procedure described by him, it was not an adoption under section 2071, which requires neither the presence nor

testimony of witnesses but only a petition. If the peti-
tioner be a married man or woman, the petition must
be joined in by the husband and the wife. To use the
language of this witness, ''Jane weren't there.'' Ac-
cording to his testimony, section 2071 was not complied
with, in that no petition was signed by George Jackson
and his wife, and therefore (the language of this court
in Helm v. Goin), in the absence of compliance with this
statute, the statute of descent and distribution controls.
Section 2591, Ky. Stats., et sequi, was in force in 1882
and 1883, authorizes the apprenticing of infants, and if
Ammon Davis witnessed any procedure, as he claims,
the facts disclosed by him indicate that it was a pro-
cedure to apprentice Jesse Capshaw and not a proceed-
ing to adopt him in conformity to section 2071. In pro-
ceedings under section 2071, neither witnesses' testi-
mony nor trial was needed, but in a proceeding to ap-
prentice him, the presence of witnesses and bondsmen
under section 2591 et sequi were required, unless one
of the parents of Jesse Capshaw was present and gave
his or her consent to the apprenticing. Section 2591
required the master to execute an indenture of appren-
ticeship or a bond. If George Moore and Lindsay Davis
were present on the occasion about which Ammon Davis
testified, they were present as witnesses and bondsmen
in a proceeding to apprentice Jesse Capshaw by George
Jackson. In the absence of his parents, it was neces-
sary for the master to show by witnesses certain ma-
terial facts, essential and required in a proceeding to
apprentice a minor. The testimony of Ammon Davis
fails to prove the adoption in two respects: (1) It
shows the wife not present nor participating or joining
in a petition with her husband; (2) a proceeding con-
flicting with that required in the adoption of another as
an heir. The testimony of Mrs. Ammon Davis is pre-
sented as corroborative of the testimony of her hus-
band. Accepting her testimony as it appears, it does
not show the existence of a judgment of adoption, but
on the contrary it tends to show nothing more than ap-
prenticeship. She did not read the judgment, and the
fact that she accompanied Jane Jackson to examine it,
to see if it was fixed up right, corroborates Ammon
Davis in his testimony wherein he states that she was
not present at the time he claims the order of adoption
was entered. She was asked:

"Q. Who read that (the judgment)? A. I couldn't tell you it had been so long ago.

"Q. Do you remember anybody else' name on the record that was read there? A. Something about his aunt.

"Q. Do you remember her name? A. Hailey.

"Q. Nancy Hailey? A. Yes, that was her name, her that was the one that took him to Uncle George, said that he didn't have no people except his aunt, that his daddy and mammy was dead.

"Q. Did this record show that too? A. Yes.
* * *

"Q. Do you know why Aunt Jane wanted to come to town and see the record? A. She wanted to be satisfied that it was all right, she said that she wanted him to have what she had, and she wanted to see that it was alright for him to get what she had. * * *

"Q. I will ask you if George Moore and Lindsay Davis were not witnesses in that judgment? A. Yes, sir.

"Q. This is what he read? A. Yes, sir.

"Q. Let me read you and see if you remember any part of it: 'Now we undertake and covenant with the Commonwealth that said George Jackson Jr. will teach the said Jesse Capshaw the trade of farming, and that he will give or cause to be given to the said Jesse Capshaw, proper medical attention and that the said Capshaw should be well fed and clothed by said Jackson.' Was that right? A. Yes, something like that. I didn't pay much attention to it.''

This testimony of Mrs. Davis is and ought to be sufficient not only to show that Mrs. Jane Jackson was not present at the time her husband, George Jackson, George Moore, Lindsay Davis, and Smith Maxey were in court, but to show that whatever she heard read was the record of the apprenticing of Jesse Capshaw. This is corroborated by the evidence that when arriving at the age of 21, George Jackson gave to Jesse Capshaw a horse, bridle, and saddle, which was usually given by a master to the apprentice on his arrival at the age of 21, when both were released from the apprenticeship, and both Capshaw and Jackson thereafter recognized

themselves under no obligations. Heirship by adoption, like that by blood, becomes a matter of common knowledge in the vicinity of the son and parents. The evidence shows that neither of them, after Jesse Capshaw arrived at 21, ever recognized the claimed relation.

Mary Jackson, the second wife of George Jackson, before their marriage, heard rumor relating to the adoption. She testified that George Jackson informed her that he had never adopted Capshaw. She married and lived with him ten or twelve years thereafter, and never heard any statement from Jackson indicating that he had adopted Jesse Capshaw. After the death of George Jackson, Capshaw stated to Walter Bartley, Dolly Bartley, G. N. Crow, Raymond Wood, Oliver Hale, L. B. Gillenwaters, and perhaps others, that he had not been adopted by George Jackson but was apprenticed and when he became 21 that he got a horse, bridle, and a saddle. Other neighbors of Capshaw and George Jackson disclosed there was no relation of adopted son and father after Jesse Capshaw arrived at the age of 21. While recognition of it is not sufficient to supply a compliance with the statute controlling adoption, the evidence thereof corroborates the fact that the proceeding was to apprentice Capshaw and not to adopt him. Carefully reviewing, considering, and weighing the evidence, leaving out of consideration the rule that the evidence necessary to supply a lost judgment must be clear and convincing, it is our conviction there is no evidence presented showing the adoption of Jesse Capshaw by George Jackson in accordance with the requirements of the statute or otherwise, and the court erred in holding the contrary.

For reasons indicated the judgment is reversed, for orders to dismiss the answer and counterclaim and cross-petition of Jesse Capshaw to the petition to settle the estate, to set aside the order allowing the $2,714.45 to Lawrence & Carter and for judgment distributing the estate of George Jackson among his next of kin as manifested or as may be manifested by pleadings or proof, and for proceedings consistent with this opinion.

Whole court sitting except Richardson, J.