## BESCHE *v.* MURPHY, Executor
### [No. 173, October Term, 1947.]

540

*Decided May 20, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, and HENDERSON, JJ., and BAILEY,
Circuit Judge, specially assigned.

*Samuel L. Silverman* and *Daniel Ellison* for the
appellant.

*L. Franklin Gerber, Jr.,* and *Albert E. Weir* for the
appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant filed her bill of complaint in the Circuit
Court No. 2 of Baltimore City on July 16, 1947. She
alleged the death of Annie M. Ripple on October 19,
1946, testate, and the appointment of the defendant,
appellee here, as executor. She also alleged that by the
will of Annie M. Ripple, all the rest and residue of her
estate was given to "those persons who under the laws
of the State of Maryland would take in case of intes-
tacy." It further appears from the bill that the testa-
trix was 88 years old at the time of her death, left no
husband or issue surviving her, and no children were
born to her throughout her life. She survived three
husbands, the first of whom was William F. Herrman.
The fifth paragraph of the bill of complaint, containing
the statement of the facts relied upon by appellant, is
here inserted.

"Fifth: That your Oratrix was born in Baltimore,
Maryland, on August 7, 1885, as Anna Geisenkotter.
When she was between two and three years of age, her
mother died and about ten months thereafter her father
died. She was then cared for by an elderly aunt until
1893. At that time Mrs. Annie M. Herrman (the de-
cedent) and her husband, William F. Herrman, offered
to adopt your Oratrix provided complete and undisputed
care, custody and control of the child, then eight (8)
years of age, were relinquished to them. After the said
Herrmans talked to the elderly aunt they turned to your
Oratrix and said: 'We are adopting you, we will be good

parents to you'. She was then taken by the Herrmans to their home and thereafter she lived with Mr. and Mrs. Herrman as their daughter. Both her given and surnames were promptly changed by Mr. and Mrs. Herrman from 'Anna Geisenkotter' to 'Stella Herrman' by which name she was thereafter exclusively known in all aspects of her life; in school, in church and in the community at large. Among her friends, acquaintances and in the neighborhood she was known as the daughter of the Herrmans. In all respects and circumstances their relationship was that of natural parents and natural daughter during the lifetime of both William F. Herrman and Annie M. Herrman (who by marriage, later became known as Annie M. Ripple). When your Oratrix started to work she delivered all her earnings to her adoptive mother, Mrs. Annie M. Herrman.

"Your Oratrix was married on April 17, 1907 to Anthony H. Besche. Invitations to the wedding were sent by Mrs. Annie Herrman in which she called your Oratrix 'her daughter', which invitations read, in part, 'Mrs. Annie Herrman requests your presence at the marriage of her daughter, Stella, to Mr. Anthony H. Besche,' a photostatic copy of said invitation is herewith filed as part hereof, marked 'Plaintiff's Exhibit B'.

"As late as April 26, 1946, Mrs. Annie M. Ripple (the decedent) had sent a postal card to your Oratrix, signed 'Mother', and on May 1, 1946, she sent another postcard to your Oratrix, also signed 'Mother', photostatic copies of which postal cards are herewith filed as part hereof, marked 'Plaintiff's Exhibit C' and 'Plaintiff's Exhibit D', respectively."

The appellant contends that under these circumstances, although she was never adopted as provided by the statute, she has the same rights of inheritance and distribution in the Ripple estate as if she had been formally adopted, and by virtue of that status she is the only one entitled to receive the residuary estate of the testatrix. She prays, therefore, that the agreement of adoption on the part of Mrs. Ripple be specifically enforced by a

decree that she is her adopted child, for the purpose of taking and inheriting under Item Nine of her last will and testament, that the executor be directed to distribute the net residuary estate of his decedent to her, and for further relief. Filed with the bill is a copy of the will of Mrs. Ripple. Item One of this will reads as follows: "I give, devise and bequeath unto Stella Besche whom I raised since childhood, the sum of Five Hundred Dollars ($500.00) to be her property absolutely, free and clear of all encumbrances." Then after several pecuniary bequests to churches and charities, she gave $300 to a legatee whose connection with her is not disclosed, she gave $1,500 to be equally divided between seven grandchildren of her last husband, she gave pecuniary bequests to three of the children of her deceased brother, and another pecuniary bequest to her godchild, and then follows Item Nine which disposes of her residuary estate in the words we have already quoted. The defendant demurred to the bill. The court sustained the demurrer, the complainant waived the right to amend, and the bill was dismissed. From this action by the Chancellor, the complainant appeals.

We may readily dispose of the question of laches which is raised by the appellee and which received some attention in the opinion of the Chancellor. The alleged agreement of adoption was made in 1893 and Mrs. Ripple died in 1946. Thus fifty-three years elapsed during which, it is argued, the appellant could have taken some action to compel her adoption, and she is now too late with her claim. However, it seems clear in the absence of fraud (which is not suggested), that she could not have filed a bill for specific performance against Mrs. Ripple during the latter's lifetime. There would have been no mutuality of remedy to enforce such a contract, because personal services on the part of the child would be involved, that being part of the obligation of a daughter. Such a contract could not have been enforced against the appellant, and consequently the appellant could not have enforced it against Mrs. Ripple. *Reed v.*

*Reed,* 165 Md. 604, 169 A. 798; *Scott v. White,* 190 Md. 389, 58 A. 2d 490. There are other objections to the right of a party to compel another to adopt her. The statute involves action by the court, looking always to the best interest of the child. Such action could not have been compelled in a suit for specific performance. In this state, unlike some other jurisdictions, adoption is not a contract alone between the parties. It requires judicial determination of the advisability of permitting such action, and if a court decrees otherwise, it is not within the power of one person to adopt another. The relationship of parent and child is of the most intimate, personal nature. Equity will not ordinarily enforce a contract to create such relationship. *Erlanger v. Erlanger,* Sup., 102 Misc. 236, 168 N. Y. S. 928, affirmed without opinion, 185 App. Div. 888, 171 N. Y. S. 1084. See, however, *Van Dyne v. Vreeland,* 1857, 11 N. J. Eq. 370. Without further discussion of this phase of the matter, it is our conclusion that the appellant is not guilty of laches in not bringing an action during the life-time of Mrs. Ripple. She has not delayed since the death of the latter.

In this case there has been no legal adoption. The first adoption statute passed in this State was Chapter 244 of the Acts of 1892, which was before the alleged oral agreement to adopt appellant. No attempt was made to comply with that statute or its amendments, and there was then, and is now, no other method by which a child can be adopted in this State. *Spencer v. Franks,* 173 Md. 73, 195 A. 306, 114 A. L. R. 263. The court cannot decree that the appellant is the adopted child of Mrs. Ripple, and it is not asked to do so. What it is asked to do is to decree that the appellant should be so regarded in the distribution of Mrs. Ripple's estate, and should receive that estate which she would have done had the agreement to adopt been carried out.

Another phase of the case, urged strongly by the appellee, is the insufficiency of the allegations of the contract. It is contended that there is no statement that

the elderly aunt had any authority to make an agreement with the Herrmans for the adoption of the child, and that the allegation is not that she did make such an agreement, but that the Herrmans offered to make one. We think, however, the agreement by the aunt might be inferred from the words used and from the actions by the parties. The allegations show the aunt was in *loco parentis,* and that is sufficient if proved. It is further suggested that the appellant cannot testify to any statements made by Mrs. Ripple under the evidence act, and that in this connection the will of Mrs. Ripple indicates that she did not regard the appellant as her daughter, because she designated her otherwise in the gift of $500, and that these facts, which appear on the face of the record, negative or diminish the allegation that any clear and definite contract for adoption was made. We are, however, not passing upon proof. We are considering whether a bill of complaint is sufficient in its allegations. We are asked to place the appellant in the position in which it is claimed she would have been, had Mrs. Ripple carried out the alleged agreement. Whether or not such an agreement was made by one who had a right to make it, and how it can be proved, are questions of evidence with which we are not concerned on this record.

The appellant relies strongly upon a statement made by this Court, speaking through Judge Stockbridge, in the case of *Clayton v. Supreme Conclave, Improved Order of Heptasophs,* 130 Md. 31, at pages 36 and 37, 99 A. 949, 951. That case was a suit on an insurance certificate by beneficiaries who were children adopted in fact at a time when there was no legal method for adoption in the state. The laws of the order which issued the endowment certificate and the certificate itself, specified the persons to whom the endowment should be made payable. Children and grandchildren were included, but adopted children were not. The insuring order had, however, accepted dues and assessments on the policy for 21 years, and the court held that the Heptasophs were

estopped from raising the question that the children were not entitled to the proceeds. In the course of the discussion the court used the words relied on by appellant, which are "the authorities very generally establish the proposition, that a parol obligation by a person to adopt the child of another as his own, accompanied by the virtual though not statutory, adoption, and acted upon by both parties during the obligor's life, may be enforced upon the death of the obligor, *who dies without disposing of the property by his will;"* (emphasis supplied). This dictum seems to be supported by the weight of authority in this country to the extent that the courts decree that a child so treated will be entitled to a right of inheritance from the estate of the foster parent such as a natural child would enjoy, where the child in question has faithfully and fully performed the duties of a natural child to the foster parents. A great many of these cases are collected in notes 27 *A. L. R.* 1325 *et seq.,* 27 *A. L. R.* 1365 *et seq.,* and 142 *A. L. R.* 84 *et seq.*

The earliest case seems to be *Van Dyne v. Vreeland,* 11 N. J. Eq. 370, decided in 1857. This was a bill filed in the life time of an alleged adoptive father to set aside a conveyance he had made to the son-in-law of his second wife. It alleges that the complainant at the age of eight weeks was turned over by its natural father to a couple who had it baptized in their name. This child was always called by its new name, called its foster parents "father" and "mother", was raised by them, and performed all the obligations of a natural child. His natural father left his property to his other children, supposing that the foster father would take care of the one turned over to him. The foster father did make several wills, leaving his property to the child, but after his first wife died, he married again, then apparently changed his mind, made a will leaving none of his property to the child, and finally deeded it to the son-in-law of his second wife. The court held that part performance took the case out of the statute of frauds,

and that the property should be held in trust for the foster father and his second wife during their lives, and after their deaths, should belong to the complainant. This case was followed by the New Jersey Chancery Court in 1888 in the case of *Van Tine v. Van Tine*, 15 A. 249, 1 L. R. A. 155. In that case an aunt had raised a child, promised her all she had, but refused to adopt, left her her personal property, but afterwards bought some real estate which did not pass by her will. The court held the child was entitled to her real estate as well as her personal property. In this case the agreement was not to adopt, but to leave the child her property. However, in a much later case in New Jersey, decided in 1933, *Burdick v. Grimshaw*, 113 N. J. Eq. 591, 168 A. 186, 188, there was an oral agreement to adopt, unassociated with any provisions for property settlement. In that case the complainant did not succeed, because the proof was not sufficient, but the court discussed the decisons of other states at considerable length, and based upon the maxim that equity considers that done which ought to be done, made the following statement of what it conceived to be the law: "It is now firmly established that an oral agreement to adopt, where there has been a full and faithful performance on the part of the adoptive child, but which was never consummated by formal adoption proceedings during the life of the adoptive parent, will, upon the death of the latter, and when equity and justice so requires, be enforced to the extent of decreeing that such child occupies in equity the status of an adopted child, entitled to the same right of inheritance from so much of his foster parent's estate that remains undisposed of by will or otherwise, as he would have been had he been a natural born child." The cases which follow this principle generally make no distinction between oral contracts and written contracts which do not comply with the adoption statutes. The basis is the full performance of the contract by the child, and its acquisition thereby of an equitable right to have the contract carried out. *Crawford v. Wilson,*

548

1913, 139 Ga. 654, 78 S .E. 30, 44 L. R. A., N. S., 773. For the sake of brevity, we omit many of the cases in other jurisdictions which have so decided, there being, in a number of states, several cases on the subject. The states so holding, with at least one reference to a leading case in each, are New York (*Middleworth v. Ordway*, 191 N. Y. 404, 84 N. E. 291), Illinois (*Hutton v. Busaytis*, 326 Ill. 453, 158 N. E. 156 and *Winkelmann v. Winkelmann*, 345 Ill. 566, 178 N. E. 118), Minnesota (*In re Herrick's Estate*, 124 Minn. 85, 144 N. W. 455, *Odenbreit v. Utheim*, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421; *In re Firle's Estate*, 197 Minn. 1, 265 N. W. 818), Michigan (*Wright v. Wright*, 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196), Kansas (*Hickox v. Johnston*, 113 Kan. 99, 213 P. 1060, 27 A. L. R. 1322; *Malaney v. Cameron*, 98 Kan. 620, 159 P. 19), Nebraska (*Franks v. Horrigan*, 120 Neb. 1, 231 N. W. 27), Missouri (*Johnson v. Antry*, Mo. Sup., 5 S. W. 2d 405), South Dakota (*Walsh v. Fitzgerald*, 67 S. D. 623, 297 N. W. 675), Texas (*Cheney v. Coffey*, 131 Tex. 212, 113 S. W. 2d 162; *Jones v. Guy*, 135 Tex. 398, 143 S. W. 2d 906, 142 A. L. R. 77), Florida (*Sheffield v. Barry*, 153 Fla. 144, 14 So. 2d 417), Montana (*Gravelin v. Porier*, 77 Mont. 260, 250 P. 823), Oklahoma (*Eggstaff v. Phelps*, 99 Okl. 54, 226 P. 82), Iowa (*Chehak v. Battles*, 133 Iowa 107, 110 N. W. 330, 8 L. R. A., N. S., 1130, 12 Ann. Cas. 140), California (*In re Taggart's Estate*, 190 Cal. 493, 213 P. 504, 27 A. L. R. 1360), New Mexico (*Barney v. Hutchinson*, 25 N. M. 82, 117 P. 890).

In some of these cases the principle of estoppel *in pais* is invoked to prevent foster parents and their privies from asserting the invalidity of adoption, where the child has fully performed its obligations. (*Jones v. Guy, supra.*) All of the cases require that there must be an agreement to adopt, although an oral contract may be proved by the acts and admissions of the parties. *Roberts v. Roberts*, 8 Cir., 223 F. 775; *Johnson v. Antry, supra*. However, the proof must be clear, cogent and convincing, so as to leave no reasonable doubt in the mind of

the chancellor. *Kay v. Niehaus,* 298 Mo. 201, 249 S. W. 625; *Burdick v. Grimshaw, supra.* And it has also been stated that the fact that a child may be disinherited by will, does not render a contract of adoption void for uncertainty. *Parks v. Burney,* 103 Neb. 572, 173 N. W. 478.

There are some jurisdictions which hold that since their legislatures have prescribed the methods by which a child may be adopted, the courts cannot declare such an adoption in case the statutory formalities are not complied with, and will not enforce a contract of adoption after the death of the supposed parent. Pennsylvania has taken that position, and a number of earlier cases from that state are cited in *Benson v. Nicholas,* 246 Pa. 229, 92 A. 139, Ann. Cas. 1916D, 1109. The same point of view is taken by Kentucky (*Carter v. Capshaw,* 249 Ky. 483, 60 S. W. 2d 959), and Wisconsin (*St. Vincent's Infant Asylum v. Central Wisconsin Trust Company,* 189 Wis. 483, 206 N. W. 921). In Alabama a distinction is made between an agreement to adopt and one to leave a child part of an estate. The former will not be enforced, (*Prince v. Prince,* 188 Ala. 559, 66 So. 27) but the latter will (*Id.,* 194 Ala. 455, 69 So. 906). In a later case, however, the Alabama court, after noting the previous decisions against the specific performance of an oral contract, entered a decree giving a child an estate where there had been a defective written contract of adoption, *Benefield v. Faulkner,* 248 Ala. 615, 29 So. 2d 1.

It is, of course, within the power of a parent to disinherit his natural child, and if a claimed adoptive parent has made a will, leaving his property to others, there would be no practical basis upon which the one who claimed a right to be considered his adopted child, could ask the intervention of the court. He could not be declared an adopted child, as we have already shown, and he could not be given a share in an estate which had been left by will to others. He is only entitled to be placed in the position he would have been in, had

he been adopted, and in that position, he would have inherited nothing. In the case of *Thomas v. Malone*, 142 Mo. App. 193, 126 S. W. 522, in which the facts have some similarity to those in the case before us, the foster father was married three times, twice after the death of the foster mother, who, with the foster father, raised the child until the latter was married at the age of 25 years. The foster father in that case died before the death of the third wife, and left a will in which he gave all of his property to the third wife and failed to mention the foster child. There was, however, a statute in force in Missouri which provided that where a parent disinherited a child without mentioning it in the will, such child was entitled to certain rights as a pretermitted heir. (Section 4611, Revised Statutes 1899, Ann. Statutes 1906, p. 2505, Mo. R. S. A. § 526). The court held that since the complainant was forgotten in her adoptive father's will, she should be accorded the rights given by law to a pretermitted heir.

In the case before us Mrs. Ripple left a will, and it is apparent that she did not intend to die intestate as to any part of her property, because she left a residuary clause in that will. That clause directs that the residue of her estate shall go to those persons who, under the laws of the State of Maryland, would take in the case of intestacy. That, however, does not create an intestacy. It simply provides a means by which it may be determined who are the beneficiaries of the residue of the estate. Such beneficiaries take under the will, and not under the intestacy statute. *Suman v. Harvey*, 114 Md. 241, at page 248, 79 A. 197, 200. Since the appellant is not one of those persons named in the intestacy statute, who would inherit had Mrs. Ripple died intestate, and since we cannot judicially amend that statute, it is claimed that there is nothing for the court to operate on, and that the bill should be dismissed. Otherwise, it is said we would be making a new will for the testatrix, contrary to her intention as she designated the appellant, not as her daughter, but one whom she had raised

since childhood. It is contended that the testatrix must have been aware, or, at least, presumed to have been aware, that since appellant had never been adopted, she did not come within the provisions of the intestacy statute, and was not included among those to whom was left the residue of the estate.

It is a familiar law that where there is a gift to a class of people described in a will, only those answering that description at the death of the testator, (or at the time of happening of a contingency, in some cases) are entitled to share in the estate. That principle has been applied by this Court in the construction of a will in which the executors were directed to convert an estate into cash and to distribute the proceeds among the heirs at law and next of kin of the testatrix "who may be entitled thereto under the laws of Maryland." The court said "The gift is to those who were, at the time of her death, her heirs at law and next of kin according to the laws of Maryland, and only those answering this description are entitled to share in the distribution of the estate." *Suman v. Harvey, supra.* A statement is quoted from 2 *Jarman on Wills,* star page 905, to the effect that the persons answering the description at the death of the testator take the property "in the character of devisee and not, as formerly, by descent". In the *Suman-Harvey* case there was an attempt to show that the testator intended that children of his deceased first cousin should take along with surviving first cousins, but the court said that as the statute of distribution did not entitle such children to take as heirs of law and next of kin, no evidence was admissible to vary the terms of the will. In a later case, where it was contended that a bequest to each of the children of the testator's brother was intended to include, not only each of the children of the brother who was alive at the execution of the will, but also the children of a brother who was not alive, the court said that the word "brother", in that case, was used in the ordinary and natural meaning of a living brother, and that since the words of the will were plain,

552

there was no latent ambiguity. *Darden v. Bright,* 173 Md. 563, 198 A. 431. In *Perkins v. Iglehart,* 183 Md. 520, 39 A. 2d 672, we refused to construe a bequest to a son's widow as bestowing the estate upon the fiancee of the son, although she afterwards married him.

The testatrix in this case has exercised her right to dispose of her property by her will, and has given the remainder of her estate to those persons who, under the laws of the State of Maryland, at the time of her death, would take in case of her intestacy. Such persons take as legatees, and not under the statute, and as the appellant is not one of those named, we cannot change the will of the testatrix to put her in that class. The entire estate of the testatrix is disposed of, and there is nothing for an equity court to act upon. Since we cannot declare an adoption after the death of the testatrx, and in the absence of such adoption the appellant does not come within, or constitute the class of those to whom the property is left, the decree will have to be affirmed.

*Decree affirmed with costs.*