In re ESTATE of Thomas R. JARBOE, Deceased.

No. 110366.

United States District Court
District of Columbia.

Nov. 20, 1964.

---

Arthur C. Elgin, Washington, D. C., for petitioner to probate.

Gilbert Hahn, Jr., Washington, D. C., for intervenor.

Joseph D. Gelb and Marvin E. Schneck, Washington, D. C., for caveator.

TAMM, District Judge.

This case is before the Court on a motion by the executor of the will of the decedent, Thomas R. Jarboe, to dismiss the petition for caveat to said will filed by the petitioner, Marie Russell Bury.

Thomas R. Jarboe, a domiciliary of the District of Columbia, died on December 14, 1963, leaving a will appointing the Washington Loan & Trust Co. (now, by consolidation, the Riggs National Bank of Washington) as executor and naming the Phillips Exeter Academy as the sole residuary legatee. Petitioner, Marie Russell Bury, as the daughter of the natural daughter of decedent's foster parents, claims to be decedent's niece and as such asserts the right to attack his will on the grounds that decedent was not of sound mind when he made it.

Petitioner claims a relationship in equity to the decedent and that by virtue of the "equitable adoption" of decedent by her grandparents she is entitled to a distributive share in the decedent's estate and a right to petition for caveat. In its motion to dismiss, the executor, The Riggs National Bank of Washington, D. C., contends that the petitioner has no relationship to the decedent which would entitle her to file a caveat under the law of the District of Columbia.

For the purpose of this motion, the facts appear to be as follows: The decedent, Thomas R. Jarboe, was born in 1873. He was placed in an orphanage in the city of Baltimore in 1878 and was subsequently taken into the home of Matthew and Jane Jarboe, the maternal grandparents of the petitioner for caveat, Marie Russell Bury. Decedent lived with Mr. and Mrs. Jarboe until their deaths in 1880, and during that period they cared for him as if he were their natural son. Upon their death, decedent was raised by their natural son, Benedict Jarboe, until he was approximately 21 years old.

During his life, Thomas R. Jarboe was treated by the foster parents and their children as a member of the family. However, the decedent was never legally adopted by Matthew Jarboe and his wife under the law of Maryland, nor could he have been, since the statute allowing for legal adoption in Maryland was not enacted until 1892—long after the deaths of the Jarboes.

■ The District of Columbia Code, § 19-307 (1961 ed.) provides that "any party in interest" may file a caveat to a will. Such a "party in interest" is one who would have been entitled to a share of the decedent's estate had the decedent died intestate. Kimberland v. Kimberland, 92 U.S.App.D.C. 145, 204 F.2d 38 (1953). The right to inherit is determined by the laws of the District of Columbia, In Re Estate of Gray, 168 F. Supp. 124, 126 (D.D.C.1958), which recognize that in the event of the death intestate of a legally adopted person, his property will pass and be distributed in the same manner as if he had been the natural child of his adoptive parents. D.C.Code, § 222, Title 16, (1961 ed.).

■ However, the validly acquired status of an adopted child in Maryland will be recognized in the District of Columbia with respect to the inheritance of property located therein. In Re Estate of Gray, supra. Thus, the issue in this case is whether the decedent had acquired in Maryland the status of a legally adopted child to the extent that the heirs of his adoptive parents would be entitled to inherit from his estate had he died intestate. If not, then the petitioner has no standing to file a caveat to his will. Since the petitioner claims that her relationship is derived by virtue of the "equitable adoption" of the decedent by her grandparents, this Court has examined Maryland law to determine whether the requisite status may be acquired there in this manner.

■ At common law there was no right of adoption, Hillers v. Taylor, 108 Md. 148, 155–56, 69 A. 715, 718 (1908); a mere executory agreement to adopt was not an adoption, and the child was not considered an heir of the parties agreeing to adopt it. 2 C.J.S. Adoption of Children § 27 (1936).

■ In Maryland, the rule is recognized that there can be no adoption establishing the legal relationship of parent and child except under and in accordance with a statute. Besche v. Murphy, 190 Md. 539, 59 A.2d 499, 502 (1948); Zimmerman v. Thomas, 152 Md. 263, 136 A. 637, 639 (1927). The general Maryland statute providing for such adoption was not passed until 1892. Acts 1892, Ch. 244 (presently Maryland Code Annotated, Article 16, Sections 78-84 (1939)). This statute, like the District statute, also contains a provision allowing a mutual right of inheritance to the intestate estate of the survivor of the adopted child and his adoptive parents.

The leading Maryland case treating "equitable adoption" is Besche v. Murphy, supra. There, the decedent

foster parent, Mrs. Ripple, died testate, her will containing a residuary clause which left property to such persons as would have taken under the Maryland law of intestate succession. In 1893, the decedent and her husband agreed to adopt the plaintiff provided complete and undisputed care, custody and control of the child, then eight years old, were relinquished to them. Thereafter, the plaintiff lived with her foster parents as their daughter. However, legal adoption of plaintiff in compliance with the statute was never carried out. Upon Mrs. Ripple's death, the plaintiff sought specific performance of the agreement of adoption," by way of a decree that she was Mrs. Ripple's adopted child for the purpose of taking and inheriting under the residuary clause of her will.

After stating that there was no way by which a child could be legally adopted in Maryland other than by compliance with the adoption statute, the Court of Appeals of Maryland said:

"*The court cannot decree that the appellant is the adopted child of Mrs. Ripple, and it is not asked to do so. What it is asked to do is to decree that the appellant should be so regarded in the distribution of Mrs. Ripple's estate, and should receive that estate which she would have done had the agreement to adopt been carried out.*" 59 A.2d at 502. (Emphasis added).

■ In other words, the application of the doctrine of "equitable adoption" does not change the *status* of the child to that of being legally adopted but is merely a recognition by courts of equity, based on the maxim that equity considers done that which ought to be done, that the child is entitled to receive upon the death of his foster parent or parents what he would have received had their contract to adopt been carried out during their lifetime.

In the New Jersey case of Burdick v. Grimshaw, 113 N.J.Eq. 591, 168 A. 186, 188 (1933), cited and quoted in Besche v. Murphy, the Court stated what is the

generally accepted rule of "equitable adoption:"

"It is now firmly established that an * * * agreement to adopt, where there has been a full and faithful performance on the part of the adoptive child, but which was never consummated by formal adoption proceedings during the life of the adoptive parent, will, upon the death of the latter, and when equity and justice so requires, be enforced to the extent of decreeing that such child occupies in equity the status of an adopted child, entitled to the same right of inheritance from so much of his foster parent's estate that remains undisposed of by will or otherwise, as he would have been had he been a natural born child."

■ The basis of the doctrine is the full performance of the contract by the child and his acquisition thereby of an equitable right to have the contract performed. However, as indicated above, the "unfulfilled contract to adopt does not confer upon such person the status of the adopted child of the parties who break the promise nor operate to constitute him heir at law of the promisor." Stith v. Willis, 219 Ga. 62, 131 S.E.2d 620, 622 (1963); 2 C.J.S. Adoption of Children § 27 (1936).

It follows logically that if the doctrine of "equitable adoption" does not afford the foster child the status in Maryland of being the legally adopted child of his foster parents, then the heirs of the foster parents can claim no rights under the Maryland statute to inheritance of the foster child's estate should he die intestate. If that requisite status is lacking under Maryland law, then such heirs can have no standing under District of Columbia law to file a caveat to a will as a "party in interest" thereto.

As yet, this exact point has not been decided by any court in either Maryland or the District of Columbia. Recently, however, the Supreme Court of Texas decided a case involving this very issue as

applied to a fact pattern essentially the same as in this case.

In Heien v. Crabtree, Tex., 369 S.W. 2d 28 (1963), Frank and Rosa Frei had taken in their home R. F. Frei, who was treated by Frank and Rosa as their own child. R. F. Frei acted in every way like a member of the family, and all members of the family treated him as such. It was agreed that the Freis would legally adopt the child, but this promise was never carried out. Frank and Rosa predeceased R. F., and R. F. died intestate. The plaintiffs, heirs at law of Frank and Rosa Frei, claimed shares of R. F. Frei's estate as collateral relatives by virtue of the "equitable adoption" of R. F. by Frank and Rosa Frei.

The Texas Supreme Court stated the issue in the case in the following manner:

"The question squarely presented is whether a legal status of parent and child is created by parties assuming and living in a relationship of parent and child pursuant to an unperformed agreement to adopt the child." 369 S.W.2d at 29.

Such a legal status would be necessary to allow the heirs of the parent to inherit from the child under the applicable Texas statute, which in substance is the same as the relevant Maryland and District statutes in the present case. Vernon's Ann.Texas Civil Statutes, Probate Code, § 40.

In holding that "equitable adoption" was not the equivalent of legal or statutory adoption, the Court gave the following reasons:

"Petitioners' rights can be no better or higher than the rights of those through whom they claim. If Frank and Rosa had survived R. F. and were seeking to establish a right of succession to his estate, they would not be heard to claim the aid of equity. *Through neglect or design they breached their agreement to adopt.* More than that, there would be no basis in promises, acts or conduct on the part of R. F. upon which

to erect an estoppel. Neither he nor his mother breached a duty to Frank and Rosa or in any way misled them to their detriment." 369 S.W.2d at 30 (Emphasis added).

This reasoning, the Texas Supreme Court found, was supported by the rationale of the Supreme Court of Missouri in Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397, 401 (1952), where, in answering an argument similar to that presented by the petitioners in both the Heien and the present cases, the Court held that:

"The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt. * * * [A] legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them * * *."

This Court feels that the reasoning of the Texas and Missouri courts is persuasive in deciding the instant case against the petitioner herein.

■ The executor in this case further asserts that the petition for caveat by Marie Russell Bury is fatally defective in that it fails to allege an agreement or contract to adopt the decedent, Thomas R. Jarboe, which is the basis of an "equitable adoption." However, such a contract may be proved by the acts and admissions of the parties, providing such proof is "clear, cogent and convincing, so as to leave no reasonable doubt in the mind of the chancellor." Besche v. Murphy, 59 A.2d at 504.

■ Be that as it may, it is unnecessary for the Court to decide this latter question. Assuming for the purpose of this motion that the facts of a contract to adopt the decedent is established, it is the holding of the Court that under the law of Maryland an "equitable adoption" does not give the child the status of being legally adopted, and hence the heirs of the child's foster parents have

no claim against his estate should the child die intestate. The petitioner here cannot be considered a "party in interest" under the applicable District law, and therefore, she has no standing to file a caveat to the will of the decedent, Thomas R. Jarboe.

Petitioner, in opposition to the motion to dismiss, relies on the case of Clayton v. Supreme Conclave, Improved Order of Heptasophs, 130 Md. 31, 99 A. 949 (1917), to support her position that "legal adoption" was possible in Maryland prior to 1892. However, in Besche v. Murphy the holding of the Clayton case was explained in the following terms:

> "That case was a suit on an insurance certificate by beneficiaries who were children adopted in fact at a time when there was no legal method for adoption in the state. The laws of the order which issued the endowment certificate and the certificate itself, specified the persons to whom the endowment should be made payable. Children and grandchildren were included, but adopted children were not. The insuring order had, however, accepted dues and assessments on the policy for 21 years, and the court held that the Heptasophs were estopped from raising the question that the children were not entitled to the proceeds." 59 A.2d at 502.

In support of her position that "equitable adoption" creates rights in the foster parents, and consequently in their heirs, against the foster child's intestate estate, the petitioner cites the Georgia case of Alexander v. Lamar, 188 Ga. 273, 3 S.E.2d 656, 123 A.L.R. 1032 (1939). There, however, the Supreme Court of Georgia, applying the generally recognized principles enumerated above, merely held that the doctrine of "equitable adoption" will not give the natural mother rights to the estate of her child's foster parents. In fact, as noted earlier in this opinion, in the later case of Stith v. Willis, 219 Ga. 62, 131 S.E.2d 620, 622 (1963), the Georgia Supreme Court held that though the equitable adoptee is entitled to specific performance of the contract to adopt, such a contract did not confer upon such person the status of a legally adopted child and did not operate to make him the heir at law of the foster parents.

Thus, these cases lend little, if any, weight to the petitioner's propositions. Moreover, petitioner cites, and the Court has found, no case which has specifically held that the concept of "equitable adoption" is the equivalent of legal statutory adoption for the purpose of allowing the foster parents or their heirs to inherit from the estate of the foster child.

Therefore, for the foregoing reasons, the executor's motion to dismiss the petition for caveat to the will of Thomas R. Jarboe filed by Marie Russell Bury will be granted.

Counsel will present appropriate order to carry out the provisions of this memorandum opinion.