Chief Justice S.mpson
delivered the opinion of the Court.
Ruth McDonald, exhibted a bill in chancery against Andrew Fleming, and William H. Hamilton,, in which she alleged that the'former was largely indebted to her for services rendered for him, in acting as his-housekeeper and in the general management of his business, and also for money expended by her for his benefit, and that he had, for the purpose of defrauding her, *286 and' preventing the collection of her demand, against him, conveyed his property to the latter, who had entered into a combination with him,- to enable him to accomplish his fraudulent object.
No action can be maintained by a female for services rendered as a concn-bine — it is against the policy of the law.
It appears that the complainant and Fleming,-had' for a number of years,-lived together and cohabited as husband and wife,- and during that time, that she had occupied a! house belonging to,- or provided by the lat--ter, who furnished the means necessary tor their joint support, and, as he was necessarily absent from' home a considerable portion of his time in consequence of his ordinary occupation, which was that of a pilot on a steamboat, she had been in the habit of attending to, and managing his business generally in his absence.-
So far as the services for which compensation is claimed, were incidental to the illegal condition in which the parties lived, and the improper connexion subsisting between them, they are not of a character which the law countenances, or for which any action ean be maintained. As she occupied the attitude of a wife, without having been one, the services she performed in acting as housekeeper, resulted from the position in which she had placed herself, and do not in law en-title her to any compensation. Indeed it is evident, that it was neither intended nor expected by the parties that she was to be otherwise compensated for such services than by the support that was furnished her.She was abundantly supplied with all the comforts and necessaries of life, was well-dressed and had money to-expend at her pleasure; and it is exceedingly doubtful,whether all the services rendered by her for Fleming, exceeded in value the amount thus furnished by him. Be this however, as it may, it is wholly inconsistent with the policy of the law to encourage such conduct, by permitting a female who has continued to live for a series of years in a state of illicit intercourse with one of the opposite sex, when a rupture occurs between them, to maintain a suit for compensation for personal services. The law will not imply any promise to pay *287 'for services rendered under such circumstances, the e'ffi-•cient cause and inducement to the whole transaction being illegal, it becomes illegal in all of its aspects, and •consequently there is no valid considerationupon which such a.promise can be implied.
Though a man who has recognized a v ornan as his wife might he esiuppod to deny it in a suit by her agáinst him. yet no decree for alimony can be made unless [here be allegation and proof to show a joint claim foe-alimony.
But.it is argued that although.a promise made-to induce cohabitation is illegal, and although the law will not-imply a promise to,pay for services growing out of such illegal intercourse, yet a .promise founded upon past cohabitations made for the purpose of remunerating a female for the degr.edation of her past life, is legal and valid. And it is contended that after the rupture between the parties in this case, Fleming promised, if the complainant would not sue him, that he would pay her more than she could obtain by law. If the correctness of the doctrine contended for were conceded, still the promise relied upon is too uncertain and indefinite to be enforced in a court of law or equity. No amount was specified — no agreement was entered into by the parties. The communication at most amounted to a proposition to compromise, in which the .whole matter was .left open for future adjustment.
. The complainant filed an amended bill in which she ■averred she had lived twelve year» or upwards with Fleming, as his lawful wife, and that he had so acknowledged her during all that time, and she prayed that she might, if he upon that ground defeated the claim to relief asserted by her in her original bill, be allowed alimony against him for her support and maintenance.
If a proper case for alimony had been made out by the complainant, as Fleming, had recognized her as his wife, and presented her in that character to the community in which they resided, he might have been precluded from denying that she was in reality his wife. But their is no cause .alleged in the pleadings as the basis of a decree for alimony. Neither cruel treatment, or abandonment, or any other fact is alleged as a reason why alimony should be granted.- Nor was it aver--. *288 red by the complainant, that she is the wife of Fleming, but only that she had lived with him, as such, and been so treated and recognized by him. Besides, if abandonment had been relied upon, and a sufficient case presented upon that ground, by appropriate allegations for a decree for alimony, the abandonment would have been justified, according to the testimony, by the wife’s unfaithfulness to her husband, She was therefore not entitled to any decree for alimony.
Complainant lived with do* íendant as his wife, though not in lact so, she advanced money which the man paid for real pio periy and it was conveyed to the man* Held Unit the woman had a lien upon the property ior the sum advanced And interest.
It appears however, that during the time the parties resided together, the complainant received about five hundred dollars, which went into the common stock. If this money was appropriated to the use of the_ defendant, it would be unjust for him to retain it, as the parties have separated, and have no longer community of interest.
The complainant in her amended bill alleged that she had advanced a part of the purchase money for lots No. 32 and 33, in the town of Newport, conveyed by John B. Lindsey to Andrew Fleming, and that she had in equity an interest in said lots to the extent of the purchase money so advanced by her. This amended bill was not answered, and therefore its allegations must be regarded as true; and they are in fact sustained by the testimony. As the legal title to the lots was conveyed to Fleming, a trust in favor of the complainant resulted from the fact that she paid a portion of the purchase money. The amount of the purchase money paid by her is somewhat uncertain, but we think it may be assumed from the proof, that she paid at least the sum of five hundred dollars. She therefore has in equity, an interest in said lots to the extent of five hundred dollars, and interest thereon from the 23d day of August, 1845, the time the purchase money was paid. As Hamilton had not paid for the property, although it had been conveyed to him, at the time she asserted her claim, and as the purchase money due from Hamilton -at that time, exceeded the sum of five hundred dollars and interest thereon, she is entitled to a decree for that *289 sum. and has a lien upon the lots to secure its payment, Besides, she alleged in her amended bill, that Fleming and Hamilton liad cancelled the contract of sale, and that amended bill not having been answered, the fact must be deemed to be as she has alleged, if the money should not be paid either by Fleming or Hamilton, within a reasonable time, to be allowed by the Court for that purpose, its payment should be enforced by a sale of the property. A decree for this sum of money is the only relief the complainant is entitled to.
Lindsey and Stevenson for plaintiffs;
Wherefore the decree dismissing her bill is reversed and cause remanded that a decree may be rendered in conformity with this opinion.