# Stephan v. Kentucky Valley Distilling Co.

(Decided Dec. 2, 1938.)

706

WOODWARD, DAWSON & HOBSON and JOSEPH CAMBRON for appellant.

LAURENCE S. GRAUMAN, County Attorney, and T. C. CARROLL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to the effective date of the 18th amendment to the Federal Constitution, U. S. C. A. Const. Amend. 18, a corporation known as "Wright and Taylor" owned a tract of land in Bullitt county, Kentucky, containing about forty acres, upon which it had constructed and operated a large distilling plant. Upon the tract, but some distance from the plant, were two springs from which water necessary for operating the distillery was obtained by means of pipe lines laid both under and upon the intervening surface. The springs had long before been cleaned out and walled up with rock, as well as covered over with structures for the purpose of preserving the purity of the water.

After national prohibition became effective, because of the constitutional amendment referred to, and on the 9th day of February, 1920, the corporation of Wright and Taylor conveyed to appellant and plaintiff below, Charles Stephan, all of their tract of land upon which the distilling plant was erected, except some six or eight acres upon which the plant stood. The springs referred to were upon the land conveyed by that deed; but there was inserted in it this language: "And the party of the first part (vendor) retains all water rights in the spring on the land; and Wright and Taylor reserve the right to remove the tank on the slop lot; and also all pipes above and below the ground."

On March 6, 1924, Wright and Taylor conveyed the balance of their tract, consisting of the six or eight acres upon which the plant formerly operated by it stood to J. C. Hagen and E. W. Hess, and which deed contained this language: "The parties of the first part also convey to the party of the second part any rights, title and interest in water rights retained by them in sale of property to Charles F. Stephans in or about the year 1920." On June 9, 1934, Hagen and Hess conveyed the small tract they obtained from Wright and Taylor to the appellee and defendant below, Kentucky Valley Distilling Company, and their deed to it contained this language: "The parties of the first part also convey to the parties of the second part all right, title and interest in the water rights belonging to said property. Same having been retained by Wright & Taylor, Inc., in the sale of property to Chas. F. Stephan, which deed is of record in deed Book 48, page 68, in the Bullitt County Court Clerk's Office. And which said water rights were conveyed to parties of the first part by Wright & Taylor, Inc., and recorded in Deed Book 50, page 350, in the Bullitt County Court Clerk's Office."

Thereafter defendant constructed a new distilling plant partly on the foundation of the old one that had been dismantled by Wright and Taylor, the total cost of which, including all newly constructed buildings and machinery, amounted to between $250,000 and $300,000. A part of that amount was expended in re-establishing the connection of water pipes and fixtures for obtaining necessary water from the two springs to operate the newly constructed distillery in the same manner that the water had been used by Wright and Taylor in the operation of their former distillery occupying the same

site. Some of the expenditures by defendant were incurred in building coverings for the springs the same as were maintained by Wright and Taylor when it owned and operated the property. Plaintiff knew all the while of the expenditures so made by the defendant, and was actually employed to assist in the construction of some of the improvements made by defendant—particularly the building of coverings over the springs.

After the conveyance by Wright and Taylor to plaintiff, the former dismantled the distilling plant, as we have stated, and removed the surface pipes connecting the plant with the springs. It also permitted Stephan to remove and appropriate the sheds over the springs; but the connecting pipes under the ground—one of which was 8 inches in diameter and the other 6 inches in diameter—remained as originally constructed, and through which water was furnished for all purposes to those occupying the part of the tract purchased by Hagen and Hess. After defendant finished the erection of its new plant and began operating it as a distillery, plaintiff, on April 30, 1937, filed this ordinary action against it and some of its officers, agents and servants. In his petition he averred that defendants were trespassing upon his land and wrongfully appropriating water from the two springs referred to, and by passing over his land along the pipe line in repairing and equipping it, to his damage in the sum of $25,000, for which amount he prayed judgment against them. Later, amended petitions were filed by which plaintiff converted his action into a declaratory judgment proceeding under our statute providing therefor, Civil Code of Practice, section 639a—1 et seq., and in which he withdrew his claim for damages and prayed for a declaration of rights, which, of course, involves the correct interpretation of the language contained in the deeds referred to, whereby the water rights in contest were retained by plaintiff's vendor and later conveyed by subsequent deeds disposing of the forty-acre tract, one of which was executed to appellee, the corporate defendant. The usual amount of demurrers and motions were made and disposed of, following which defendants answered, and in their answers they denied the trespasses complained of and affirmatively averred ownership by appellee of the water rights in and to the springs on plaintiff's land because of their retention in the various deeds referred to, and which embraced

the right of ingress and egress to and from plaintiff's land in maintaining the pipe line connections of the springs to the newly constructed plant of the corporate defendant.

Another paragraph of the defensive pleadings was, that plaintiff, by his silence, and by his conduct, was estopped to assert the rights contended for by him, even though the language taken from the deeds supra was insufficient to divest them from him, as was and is his contention. Some depositions were taken by the parties, while other testimony was heard orally before the court, and upon submission the judge of the Bullitt circuit court, Hon. William H. Fulton, now a member of this Court, held that the corporate defendant owned the water rights in controversy in and to the two springs located on plaintiff's land and all rights necessary for appropriation thereof in serving its newly constructed plant. The cost was adjudged against plaintiff, and from those conclusions and the judgment of the court based thereon he prosecutes this appeal.

A preliminary question is raised by counsel for appellee, and which is, that the evidence heard at the trial—introduced both by depositions and by parol testimony of witnesses who testified at the hearing—has not been made a part of the record so as to be considered by this court on appeal. The oral testimony of the witnesses who appeared in open court at the trial,. was taken by a stenographer who later transcribed it. The volume containing it has been brought here as a part of the record, but it was never approved by the trial judge, nor is there any order filing it as a part of the evidence heard at the trial. Under numerous rulings of this court that ·evidence is not presented in a manner to be considered by us, since such proof heard in the trial of an equity proceeding must be˙ made a part of the record by a bill of evidence or a bill of exceptions in the same manner as proof taken in the trial of an ordinary action, and which rule of practice is thoroughly settled in this jurisdiction. Three of the latest cases in which the rule was so announced are Asher v. Nuckols, 253 Ky. 223, 69 S. W. (2d) 331; Harp v. Prudential Insurance Company of America, 261 Ky. 295, 87 S. W. (2d) 595; and Jesse v. Haney, 275 Ky. 699, 122 S. W. (2d) 490, this day decided. There are many prior ones and some later ones to the same effect, with none to the contrary. However, many of the points discussed and relied on were

developed by depositions of various witnesses, but even they are not incorporated in any bill of exceptions and certified as having been read and heard at the trial. However, if such departures from correct practice should be ignored and the record be regarded as complete so as to entitle us to consider both the depositions and the parol testimony of witnesses heard at the trial, we are then of the opinion that the trial court in its judgment appealed from correctly declared the rights of the parties as emanating from the transactions referred to.

Much discussion is indulged in by learned counsel for appellant with reference to the distinction between "reservations" and "exceptions" contained in conveyances of property; but this court has in more recent years disregarded the common law technical distinction between the two terms, whereby rights are reserved or excepted by the conveyor in such instruments, as will be seen by cases cited in volume 5 of Caldwell's Kentucky Judicial Dictionary, beginning on page 1068 under the subject of "Exceptions (in deeds)", and in volume 6 under the heading "Reservation", beginning on page 2411. Among the cases cited in volume 5 of that work, under the heading of "Exceptions" is that of Prewitt v. Wilborn, 184 Ky. 638, 212 S. W. 442, in which we said—in defining an "exception" and in distinguishing it from a "reservation" contained in a conveying instrument—this [page 450]: "An exception in a deed, as distinguished from a reservation, is some part of the boundary described in the deed which the grantor *retains* title to and does not convey by the deed." (Our emphasis.) The writer of the opinion then cites the case of Hicks v. Phillips, 146 Ky. 305, 142 S. W. 394, 47 L. R. A., N. S., 878, in which there was presented to us for determination the same contention based upon the same alleged distinction that is now urged by learned counsel for appellant, and in disposing of it we said [page 395]: "A reservation is a clause in a deed, whereby the grantor reserves some new thing to himself issuing out of the thing granted and not in esse before; but an exception is always a part of the thing granted, or out of the general words or description of the grant. 4 Kent. 468; Brown, etc., v. Anderson, 88 Ky. 577, 11 S. W. 607, 11 Ky. Law Rep. 107. However, a reservation is not always created, because the word 'reserves,' or 'reserving,' is employed. 'Reserving' sometimes has the force of 'sav-

ing' or 'excepting.' 2 Coke Litt. 413; Whitaker v. Brown, 46 Pa. 197; Dee v. King, 77 Vt. 230, 59 A. 839, 68 L. R. A. 860. In general, a reservation is like an exception—something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant. Dyer v. Sanford, 9 Metc. (Mass.) 395, 43 Am. Dec. 399. 'Reserving' and 'excepting,' although strictly distinguishable, are often used interchangeably or indiscriminately, and the use of either term is not conclusive as to the nature of the provision. Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 So. 618; Keeler v. Wood, 30 Vt. [242] 246; Roberts v. Robertson, 53 Vt. 690, 38 Am. Rep. 710; Stockwell v. Couillard, 129 Mass. 231; Martin v. Cook, 102 Mich. 267, 60 N. W. 679; 13 Cyc. 672; 34 Cyc. 1641. Thus, if A. sell a farm of 100 acres, and reserves a certain tract of 5 acres contained in the 100 acres, the effect is just the same as if the five acres had been excepted from the operation of the deed. So, if A. sell his farm and reserve the timber thereon, the effect is just the same as if the timber had been excepted. In either case, the title to the timber does not vest in the grantee, but remains in the grantor. Being a part of the thing granted, it constitutes an exception, and not a reservation in the technical sense." See also text in section 310, Volume 16, American Jurisprudence.

Therefore, if the deed from Wright and Taylor to plaintiff had employed the word "reserve", then, under the Hicks opinion, it should be construed in law and given the same effect as if the word "except" had been employed. However, it contained neither the words "except" nor "reserve", but employed the word "retain" —which we, in the Prewitt opinion, supra, said created an exception as defined in the Hicks opinion. In other words, under those opinions the vendor of plaintiff never conveyed to him its water rights in and to the springs located upon the land that he purchased. On the contrary such rights were "retained" or "excepted" from the property conveyed to him, with the title in and to such rights still remaining in plaintiff's vendor. They were later conveyed to Hagen and Hess and they, in turn, conveyed them to the corporate defendant with no knowledge on its part of plaintiff or any other person questioning the right of their vendor to the water rights in controversy.

It is argued in brief of plaintiff's counsel that the

water rights were abandoned by Wright and Taylor. The right was one issuing out of real estate and was and is consequently of the same nature as the property out of which it issued—real estate. It is, therefore, doubtful if its owner could relinquish his title by abandonment, or another become invested with title thereto, except by adverse possession, which was never created in this case, nor is it attempted to be relied on. But, however that may be—and conceding for the purposes of the case that the abandonment contended for could be made—the fact still remains that the corporate defendant in purchasing the property did so under the bona fide belief that the water rights in controversy went with and were a part of the land it purchased from Hagen and Hess, as was clearly shown by the records of conveyances from and after the deed of Wright and Taylor to plaintiff made in 1920. Nothing appeared on the face of those deeds showing any relinquishment, abandonment, or modification of those rights different from what they were employed before the conveyance to plaintiff of the tract upon which the springs were located. Defendant, therefore, had the right to conclude that they were yet intact and embraced all of the privileges exercised by the owner of the water rights prior to its conveyance to plaintiff. It therefore, became vested, by the deed from Hagen and Hess to it, with all such water rights and appurtenant privileges as were owned and exercised by plaintiff's vendor before its conveyance to him.

We are also of the opinion that plaintiff is estopped to make a contrary contention. He stood by and watched the expenditure of more than a quarter of a million dollars without making complaint to the one who was expending it, and when he knew that it was the purpose of the one incurring the vast outlay to use the springs and the water therefrom, in the manner that Wright and Taylor had theretofore done, in the operation of its plant. Not only so, but he participated as a hired servant in making necessary improvements in connection with the springs whereby the water flowing from them could be used as it had therefore been done by his vendor.

But it is insisted that even so, then the reservation or exception referred to only one spring and, therefore, defendant can claim no water rights in and to both springs. But, it is perfectly manifest from the record—

and from the conduct of all parties—that the "reserved", "excepted", or "retained" water rights embraced all sources from which water was obtained for the purposes for which it was used by Wright and Taylor. The evidence, if it could be consulted, discloses that for sometime immediately prior to plaintiff obtaining his deed from Wright and Taylor, water from the smaller spring had not been used by those occupying the remaining buildings of its former plant, and it was evidently an oversight of the draftsman of plaintiff's deed in employing the singular term instead of the plural in giving the sources of the water rights retained. Besides, our Statutes, section 457, prescribes a rule for *statutory* construction to the effect that "A word importing the single number only may extend and be applied to several persons or things, as well as to one person or thing, and a word importing the plural number only may extend and be applied to one person or thing as well as to several persons or things." That rule—though as expressly enacted is made applicable to the interpretation of statutes—furnishes grounds for adopting the same rule in the interpretation of contracts when the facts clearly demonstrate the necessity therefor in order to carry out the plain intention of the parties.

It is, therefore, our conclusion that the judgment appealed from correctly declared the rights of the parties, and for which reason it is affirmed. Whole court sitting, except Judge Fulton who took no part in the consideration of the case.