RENDERED: JUNE 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0143-DGE

G. G. AND T. S.                                                         APPELLANTS

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-1399
JACKSON CIRCUIT COURT NO. 23-AD-00018

CABINET FOR HEALTH AND FAMILY                               APPELLEES
SERVICES; A. L. V., A MINOR CHILD;
AND C. L.

**OPINION OF THE COURT BY JUSTICE GOODWINE**

**REVERSING AND REMANDING**

Petitioners, T.S. and G.G., are an unmarried couple who jointly petitioned the Jackson Circuit Court, Family Division, to adopt T.S.'s biological granddaughter for whom they are permanent custodians. The family court dismissed the petition, holding KRS[1] Chapter 199 does not allow unmarried couples to jointly adopt children. The Court of Appeals affirmed. Petitioners sought discretionary review, which we granted. After review of the record, applicable law, and the arguments of the parties, we reverse the decision of the Court of Appeals and remand this matter to the trial court.

---

[1] Kentucky Revised Statutes.

## BACKGROUND

A.L.V. ("the child") was born to C.L. on April 17, 2017.[2] The Madison Circuit Court, Family Division granted Petitioners joint permanent custody of the child in November 2017.[3] Petitioners have exclusively and jointly cared for the child since her birth. They have been in a committed relationship for more than seventeen years and reside together. They are not married and do not wish to be. In September 2023, Petitioners filed a petition in the Jackson Circuit Court, Family Division to jointly adopt the child with C.L.'s consent.

Upon receipt and review of the petition, the Cabinet issued a confidential investigative report notifying the family court it was unable to process the petition because "KRS 199.470(1) & 199.520(2) [do] not allow for adoption of the same child by two unmarried individuals. This petition does not state that the petitioners are married." Record ("R") at 10. The Cabinet declined to take further action unless Petitioners amended their petition.

Petitioners moved to compel the Cabinet to process the petition and file a report, arguing neither KRS 199.470(1) nor KRS 199.520(2) prohibit an unmarried couple from jointly adopting a child. Petitioners also moved for an evidentiary hearing and for appointment of an investigator under KRS 199.510(2), arguing "the Cabinet is arbitrarily and unreasonably withholding consent to adoption." R. at 23. The Cabinet objected, again arguing a

---

[2] The parties have not identified a biological or putative father of the child. KRS 199.480(1)(b).

[3] Madison Circuit Case No. 17-J-00183-001.

2

statutory prohibition on adoption by unmarried couples.[4]  The family court

dismissed the petition because it did "not comply with statutory requirements

since Kentucky [s]tatutes do not permit adoption by an unmarried couple."  *Id.*

at 35.  Petitioners appealed as a matter of right to the Court of Appeals.

The Court of Appeals affirmed the trial court and held

> if the General Assembly had intended to permit a
> petition for the joint adoption of a child by an
> unmarried couple, it would have said so.  However, it
> did not.  [Petitioners'] failure to strictly comply with the
> requirements of KRS 199.470 precluded the Cabinet
> from moving forward with the petition.

*G.G. v. Cabinet for Health and Family. Servs.*, 2023-CA-1399-ME, 2024 WL

1122356, *3 (Ky. App. Mar. 15, 2024).  The lower court noted that, while

Petitioners could not jointly adopt the child, either petitioner could adopt the

child individually or Petitioners could get married to jointly adopt her.[5]

Petitioners appealed to this Court.  We granted discretionary review and

heard oral argument.

## ANALYSIS

The sole question on appeal is whether KRS Chapter 199 prohibits

unmarried couples from jointly petitioning to adopt.  Because this is an issue

of pure statutory interpretation, we review the Court of Appeals' decision *de*

*novo.  Mr. Roof of Louisville, LLC v. Estate. of Henry*, 681 S.W.3d 115, 121 (Ky.

---

[4] Counsel for the Cabinet entered a limited appearance to respond to Petitioners' request to compel it to process the application and file a report.  R. at 14.

[5] The Court of Appeals also affirmed the trial court's denial of an evidentiary hearing and appointment of an investigator.  Petitioners have not raised these as issues for this Court's review.

2023). We give no deference to the lower courts' interpretation of statutes or conclusions of law. *Id.*

Adoptions are creatures of statute. *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997). Because of this, "[n]othing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts." *Id.* The statutory provisions relevant to this appeal include:

> (1) Any person who is eighteen (18) years of age and who is a resident of this state or who has resided in this state for twelve (12) months next before filing may file a petition for leave to adopt a child in the Circuit Court of the county in which the petitioner resides.
>
> (2) If the petitioner is married, the husband or wife shall join in a petition for leave to adopt a child unless the petitioner is married to a biological parent of the child to be adopted, except that if the court finds the requirement of a joint petition would serve to deny the child a suitable home, the requirement may be waived.

KRS 199.470. This Court has never addressed whether Kentucky's adoption statutes bar unmarried couples from jointly petitioning to adopt. We hold they do not.

*Krieger v. Garvin*, 584 S.W.3d 727 (Ky. 2019), though not an adoption case, is instructive regarding statutory construction. In *Krieger*, a child's maternal grandfather and his long-term girlfriend petitioned to be jointly named de facto custodians. *Id.* at 728. This Court held the couple was not precluded from being named de facto custodians simply because they were unmarried. *Id.* at 730. The Court reached this conclusion despite the statute's

4

use of singular terms including "a person" and "the primary caregiver." *Id.* at 729. The Court's decision was based on two grounds: (1) KRS 446.020(1) supports extending the statute's singular terms to more than one person; and (2) the use of "unless the context requires otherwise" in KRS 403.270(1) allows trial courts to "act in the best interests of the child in determining which individual (or individuals in this case) qualify as the child's de facto custodian(s)." *Id.* at 729-30. Both of these conclusions are relevant to our interpretation of KRS 199.470.

First, KRS 446.020(1), necessitates reading KRS 199.470(1) to allow unmarried couples to jointly petition to adopt. When construing a statute, "[a] word importing the singular number only may extend and be applied to several persons or things, as well as to one (1) person or thing[.]" KRS 446.020(1). Simply put, "the singular includes the plural." *Davis v. Goodin*, 639 S.W.2d 381, 382 (Ky. App. 1982). This has been a rule of construction for Kentucky statutes since at least 1906. *See Greenleaf v. Woods*, 96 S.W. 458 (Ky. 1906). The current version of KRS 446.020(1) was enacted in 1942 and has not since been amended. *Krieger*, 584 S.W.3d at 730. We presume the General Assembly "knows and understands the then-existing laws" when it enacts legislation. *Id.* (quoting *Castle v. Commonwealth*, 411 S.W.3d 754, 758 (Ky. 2013)).

Kentucky's adoption statutes, as codified in KRS 199.470-199.590, were originally enacted in 1950. *Welsh v. Young*, 240 S.W.2d 584, 585 (Ky. 1951). While the statutes, including KRS 199.470, have been amended during the

5

intervening years, the provision allowing "any person" who meets the other statutory criteria to petition for adoption has not changed. We presume the General Assembly knew of KRS 446.020(1) and its effects when it enacted and amended KRS 199.470. Therefore, under our rules of statutory construction, "any person" must be read to include the plural, which allows unmarried couples to file joint petitions.

The Cabinet argues this interpretation of KRS 199.470(1) reads "unmarried couples" into the statute and requires this Court to define this new term. We disagree. Our interpretation adds nothing to the statute. Instead, to read the statute to include a bar on unmarried couples petitioning for adoption would be an impermissible addition to its plain language. *See Day*, 937 S.W.2d at 719. Contrary to the Cabinet's argument, there is no need for this Court to define "unmarried couple" beyond recognizing that such couples are included within the meaning of "any person."

The Cabinet further claims KRS 199.470(2) prohibits interpreting "any person" to include unmarried couples. This is a misreading of the statute. KRS 199.470(2) creates an additional requirement for *married* petitioners. The spouse of a married petitioner must join the petition unless the petitioner is married to the child's biological parent or "the court finds the requirement of a joint petition would serve to deny the child a suitable home[.]" KRS 199.470(2). Rather than creating a barrier to adoption for unmarried couples, this language makes it possible for married petitioners to adopt without their spouse at the trial court's discretion. Despite the Cabinet's arguments, when read as a

6

whole, nothing in Kentucky's adoption statutes conflicts with our interpretation of "any person" to include unmarried couples.

Next, as this Court did in *Krieger* regarding de facto custody, we will consider how Kentucky's adoption statutes instruct trial courts to exercise their discretion. KRS 403.270(1)(a) reads in relevant part that, "unless the context requires otherwise, 'de facto custodian' means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child[.]" This Court read the use of "unless the context requires otherwise" to give trial courts the discretion to act in the child's best interest in determining who qualifies as a de facto custodian. *Krieger*, 584 S.W.3d at 729. The Court reversed the Court of Appeals' determination that a couple could not be named joint custodians solely because they were unmarried because "[t]rial courts are vested with a great deal of discretion in custody proceedings in order to ensure that the best interests of the child are protected." *Id.*

Like decisions regarding de facto custody, trial courts are afforded a great deal of discretion in determining whether to terminate parental rights and grant adoption. *See M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022). As discussed above, a court may act in its discretion to waive the requirement that a petitioner's spouse join a petition in some circumstances. KRS 199.470(2). In deciding whether to grant any adoption petition, a trial court has discretion in determining whether the evidence proves "that the petitioners are of good moral character, of reputable standing in the community and of ability to

7

properly maintain and educate the child; and that the best interest of the child will be promoted by the adoption and that the child is suitable for adoption." KRS 199.520(1). A trial court must use its discretion to determine if the evidence proves adoption is in the child's best interest. However, the fact that petitioners are unmarried cannot be the basis for denying a petition.

The Cabinet is obligated to investigate the circumstances of every adoption including those initiated by unmarried couples. KRS 199.510. Specifically, the Cabinet must report to the trial court

> (a) Whether the contents of the petition required by KRS 199.490 are true;
>
> (b) Whether the proposed adoptive parents are financially able and morally fit to have the care, custody and training of the child; and
>
> (c) Whether the adoption is [in] the best interest of the child and the child is suitable for adoption.

KRS 199.510(1). Nothing in this opinion prevents the Cabinet from continuing to investigate every adoption and report on circumstances relevant to these factors. Just as the trial court must exercise its discretion in determining the child's best interest, the Cabinet must investigate and report whatever circumstances are relevant to these statutory factors.

For completeness, we must address the Cabinet's regulatory authority in this area. The Cabinet has the authority to "establish criteria to be followed for the adoption of children and promulgate this criteria by administrative regulation." KRS 199.472(1). At oral argument, the Cabinet argued refusal to complete reports on petitions filed by unmarried couples has been its practice

8

for at least the last decade. However, in neither its argument nor its brief, did the Cabinet identify a specific regulation codifying this prohibition. Our research revealed regulations which detail the general requirements for nonfamilial foster or adoptive parents and relative or fictive kin foster or adoptive parents. 922 KAR[6] 1:350 §§ 2(4), 3(4). Under both sections, "[a] married couple may apply to become foster or adoptive parents; or . . . [a] single, unmarried person may apply to become a foster or adoptive parent." *Id.*[7]

We interpret administrative regulations by the same rules as are applicable to statutes and "we presume that the legislature did not intend an absurd result." *Comprehensive Home Health Servs., Inc. v. Prof'l. Home Health Care Agency, Inc.,* 434 S.W.3d 433, 441 (Ky. 2013) (internal quotation marks omitted). We must "adopt a '[c]onstruction that will accomplish the purpose of the law.'" *Id.* at 442. For the Cabinet's regulations to prohibit adoption by unmarried couples where KRS 199.470 does not contain such a prohibition is surely an absurd result. Although the Cabinet has the authority to create criteria for adoption, it cannot do so in contravention of the adoption statutes themselves.

---

[6] Kentucky Administrative Regulations.

[7] A version of the regulation limiting prospective adoptive parents to married couples and unmarried individuals has existed since at least 2010, making the Cabinet's assertion that it has been rejecting petitions from unmarried petitioners for more than a decade accurate.

Finally, the Cabinet claims that allowing unmarried couples to jointly adopt amounts to this Court's recognition of common law marriage for the first time. It does not. Where recognized, a common law marriage "takes legal effect, without license or ceremony, when two people capable of marrying live together as spouses, intend to be married, and hold themselves out to others as a married couple." *Common-Law Marriage*, BLACK'S LAW DICTIONARY (12th ed. 2024). It is well-settled that Kentucky law requires a marriage in fact and common law marriages are not recognized as valid. *McDaniel v. McDaniel*, 280 S.W.145, 146 (Ky. 1926). Despite having been in a committed relationship for close to two decades, Petitioners do not wish to be married and do not hold themselves out as married in their community. Our decision does not recognize them as married.

## **CONCLUSION**

Based on the foregoing, the opinion of the Court of Appeals is reversed, and this matter is remanded to the Jackson Circuit Court, Family Division with instructions to reinstate the petition and for the Cabinet to investigate and report as mandated by KRS 199.510.

All sitting. Lambert, C.J.; Bisig, Conley, Keller, and Thompson, JJ., concur. Nickell, J., dissents by separate opinion.

NICKELL, J., DISSENTING: Respectfully, I must dissent because I perceive the majority opinion to represent pure legislative policymaking in the guise of statutory interpretation. The majority's decision to permit an unmarried couple to jointly file for adoption heralds a major and unjustified

10

expansion of the law in this Commonwealth. In accordance with the separation of powers and our precedents, I believe the prerogative to impose a policy change of this magnitude belongs solely to the General Assembly and not to a majority of this Court. Therefore, I dissent and would affirm the well-reasoned decision of the Court of Appeals.

In Kentucky, adoption is a purely statutory right in derogation of the common law. *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997). We have long "required strict compliance with the procedures" pertaining to adoption.[8] *Id.*; *Goldfuss v. Goldfuss*, 565 S.W.2d 441, 442 (Ky. 1978); *Jouett v. Rhorer*, 339 S.W.2d 865, 866 (Ky. 1960); *Higgason v. Henry*, 313 S.W.2d 275 (Ky. 1958); *Carter v. Capshaw*, 249 Ky. 483, 60 S.W.2d 959, 962 (1933); and *Villier v. Watson*, 168 Ky. 631, 182 S.W. 869, 871 (1916). To properly construe the law of adoption, "[n]othing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts." *Day*, 937 S.W.2d at 719.

KRS 199.470 states in pertinent part:

(1) **Any person** who is eighteen (18) years of age and who is a resident of this state or who has resided in this state for twelve (12) months next before filing may file **a petition** for leave to adopt a child in the Circuit Court of the county in which **the petitioner** resides.

(2) If **the petitioner** is married, the husband or wife **shall join in a petition** for leave to adopt a child unless the petitioner is married to a biological parent of the child to be adopted, except that if the

---

[8] Certainly, constitutional rights must prevail over conflicting adoption statutes. *See Roark v. Yarbrough*, 411 S.W.2d 916, 918 (Ky. 1966). However, I note no such constitutional claims have been presented here.

11

court finds the requirement of a **joint petition** would serve to deny the child a suitable home, the requirement may be waived.

(Emphases added).

Read together, KRS 199.470(1) and (2) plainly authorize the filing of a petition for leave to adopt in three circumstances. First, KRS 199.470(1) authorizes "[a]ny person" who otherwise complies with the statutory requirements to "file a petition[.]" Second, KRS 199.470(2) requires married individuals to "join in a petition" unless "the requirement of a joint petition would serve to deny the child a suitable home[.]" Third, KRS 199.470(2) also permits the married partner of the adoptive child's biological parent to file as an individual. Because the pertinent statutory text does not allow "unmarried couples" or "any persons" to file a *joint* petition, I would refrain from inserting these words into the law by construction or implication.

Importantly, nothing in the text of KRS 199.470 explicitly authorizes unmarried couples to jointly file a petition for leave to adopt a child. Despite its assurances to the contrary, the majority has clearly read, assumed, implied, inferred, or otherwise supplied the legal terms "joint" or "jointly" to modify the phrase "may file a petition" in KRS 199.470(1). Similarly, the majority improperly supplies the phrase "may join in a petition" which augments the ordinary meaning of the phrase, "[a]ny person . . . may file a petition[.]" A cursory comparison between KRS 199.470(1) and (2) manifests the legislature's intent and ability to distinguish between "a petition" and "a joint petition." Likewise, the phrase "shall join in a petition" as used in KRS 199.470(2)

12

demonstrates the legislature's cognizance and capability to mandate or permit the filing of a joint petition in an adoption case.

The presence or absence of the words "joint" or "jointly" in KRS 199.470(1) carries tremendous legal significance because the existence of a joint right is governed by the substantive law and relates to a "common object or unity of interest" held by two or more persons. *Pelly v. Boyer*, 7 Bush 513, 70 Ky. 513, 514, 1871 WL 6553 at **1 (1870). Frequently, the law recognizes joint rights in the context of "estates in real property involving more than one owner: tenancy in common, joint tenancy, and tenancy by the entirety." *Sanderson v. Saxon*, 834 S.W.2d 676, 678 (Ky. 1992). Similarly, in the contract law setting, parties commonly agree to "bind themselves jointly, severally, or jointly and severally." 12 *Williston on Contracts* § 36:1 (4th ed. 2024). Additionally, statutes may provide for other joint rights including the rights of commercial partnerships under KRS 362.180 and the right to joint custody of children under KRS 403.270 and KRS 405.020.

The assertion of a substantive joint right among two or more parties operates in tandem with the procedural rules of joinder. For example, CR[9] 20.01, which governs permissive joinder, specifies that

> [a]ll persons may join in one action as plaintiffs if they assert **any right to relief jointly**, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

---

[9] Kentucky Rules of Civil Procedure.

(Emphasis added).  The purpose of the permissive joinder rule is simply "to remove the procedural obstacles of the common law."  *Lansburgh & Bro. v. Clark*, 127 F.2d 331, 333 (D.C. Cir. 1942) (interpreting federal counterpart to CR 20.01).  The procedural joinder rule cannot create or change the underlying substantive rights or relationships among the parties.  *Id.*  In other words, "rights that are separate and distinct under the governing law are not transformed into joint rights" simply because two or more individuals join in a single filing.  Wright & Miller, 7 *Fed. Prac. & Proc. Civ.* § 1652 (3d ed. 2025).  In my estimation, there can be no joint right to file for adoption here because, as G.G. and T.S. are unmarried individuals uncloaked with any recognized formal legal bond, "neither the parties nor the causes are the same" and "[t]here is no privity in blood, . . . estate, or law."  *Lansburgh*, 127 F.2d at 333.

By reading the word "joint" into the text of KRS 199.470(1), the majority has clearly invented a new procedural device, which the legislature has not explicitly authorized.  Further, by recognizing the right of "any persons" to jointly file, the majority has thereby improperly created a new and heretofore unrecognized substantive legal relationship between the parties.  Thus, in my view, the majority's reasoning neither comports with the plain language of KRS 199.470 nor adheres to the measure of judicial restraint this Court previously espoused in *Day*.

In addition, the majority's insertion of the legal term "joint" into KRS 199.470(1) contradicts a fundamental principle of interpretation which provides:

14

> The courts may supply *clerical or grammatical* omissions in obscure phrases or language of a statute in order to give effect to the intention of the Legislature, presumed or ascertainable from the context, or to rescue the act from an absurdity. But where a statute on its face is intelligible, *the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a casus omissus, or cure an omission*, however just or desirable it might be to supply an omitted provision. It makes no difference that it appears the omission was mere oversight. . . . To insert or supply by construction . . . would be an act of legislation and not an act of judicial construction. The statute by construction cannot be extended or enlarged beyond its fair import.

*Hatchett v. City of Glasgow*, 340 S.W.2d 248, 251 (Ky. 1960) (emphasis added) (internal citations omitted). The text of KRS 199.470 explicitly limits authorization for the filing of a joint petition to married couples and this fact precludes any extension to unmarried couples by implication, interpretation, or judicial fiat. Indeed, such a plain reading also comports with the "familiar and general rule of statutory construction that the mention of one thing implies the exclusion of another, as is expressed in the maxim, 'Expressio unius est exclusio alterius[.]'" *Jefferson Cty. v. Gray*, 198 Ky. 600, 249 S.W. 771, 772 (1923).

Moreover, the majority overstates and misapplies KRS 446.020(1) to support its holding. KRS 446.020(1) provides:

> [a] word importing the singular number only may extend and be applied to several persons or things, as well as to one (1) person or thing, and a word importing the plural number only may extend and be applied to one (1) person or thing as well as to several persons or things.

Contrary to the majority's reasoning, the permissive language of KRS 446.020(1) does not *necessitate* "reading KRS 199.470(1) to allow unmarried

15

couples to jointly petition to adopt." *Ante*, at 5. In addition, by primarily relying on KRS 446.020(1) to discern legislative intent, the majority fails to consider the vehement legal disfavor toward unmarried relationships which prevailed at the time KRS 199.470 was enacted.

Assuming for argument the singular includes the plural in this context, the plural form of the word "person" simply cannot be read to supply the operative words "joint" or "jointly" which, again, are legal terms of art that do not appear in the text of KRS 199.470(1). *Day*, 937 S.W.2d at 719 ("[W]hat is not found in the statute is a matter for the legislature to supply[.]"); *Hatchett*, 340 S.W.2d at 251. Further, I would hold KRS 446.020(1) does not apply here because "courts cannot create ambiguity in statutory texts" through the use of interpretative aids. *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 139 (Ky. 2024).

The purpose of KRS 446.020(1) is merely to "give courts some flexibility to interpret singular and plural words." Norman Singer & Shambie Singer, 2A *Sutherland Statutory Construction* § 47:34 (7th ed. 2024). It certainly does "not *require* singular and plural forms to have interchangeable effect." *Id.* (Emphasis added). Moreover, Kentucky precedent limits the use of this rule to situations where "*the facts clearly demonstrate the necessity* therefor in order to carry out the plain intention" of statutory or contractual provisions. *Stephan v. Ky. Valley Distilling Co.*, 275 Ky. 705, 122 S.W.2d 493, 498 (1938) (emphasis added).

16

No factual necessity mandates employment of the plural form of the word "person" to carry out the plain intention of the legislature here. The very notion of permitting unmarried couples to jointly adopt represents a profound and seismic departure from well-established Kentucky policy and precedent which has heretofore refused to recognize the existence of joint legal rights and responsibilities arising from a state of mere cohabitation. *Williams v. Payne*, 515 S.W.2d 618 (Ky. 1974) (holding member of an unmarried couple may not pursue recovery for services and money furnished to deceased cohabitant during course of relationship); *Jones v. Campbell Co.*, 353 S.W.2d 208, 209 (Ky. 1961) ("[S]ound public policy forbids the allowance of compensation founded on a relationship known to be illicit."); *Yett's Adm'r v. Yett*, 261 Ky. 737, 88 S.W.2d 962, 963 (1935) ("Concubinage is not encouraged by the courts[.]"); *Nall v. Wakenva Coal Co.*, 236 Ky. 598, 33 S.W.2d 631, 635 (1930) ("[W]e . . . are constrained to hold that a sound public policy forbids the allowance of compensation founded on a relationship known to be illicit."); *McDonald v. Fleming*, 12 B. Mon. 285, 51 Ky. 285, 286 (1851) (holding "it is wholly inconsistent with the policy of the law to encourage" a state of cohabitation between unmarried persons). Therefore, I share the view expressed by Judge Combs below "that if the General Assembly had intended to permit a petition for the joint adoption of a child by an unmarried couple, it would have said so." *G.G. v. Cabinet for Health & Family Servs.*, No. 2023-CA-1399-ME, 2024 WL 1122356 at *3 (Ky. App. March 15, 2024).

Indeed, the United States Supreme Court has vividly remarked that legislatures do not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Yet, the majority justifies its breathtaking departure from foundational Kentucky precedent and policy by reference to semantic subtleties and ambiguities involving singular and plural forms of the phrase, "any person," and the misemployed presumption that "the General Assembly 'knows and understands the then-existing laws' when it enacts legislation." *Ante*, at 5 (citation omitted). Unfortunately, the myopic view taken by the majority overlooks the entirety of the substantive law and public policy disfavoring unmarried relationships.

As the majority acknowledges, KRS 199.470 was originally enacted in 1950 and has not been subsequently amended as pertinent to the present appeal. *Ante*, at 5-6. In 1950, however, sexual relations between unmarried persons, including those in a state of cohabitation, constituted the misdemeanor offense of fornication. KRS 436.070 (repealed 1974); *Hutsell v. Commonwealth*, 243 S.W.2d 898, 899 (Ky. 1951) (noting evidence an unmarried woman "had given birth to an illegitimate child . . . proved her to have been guilty of the misdemeanor of fornication[.]"); *Lydic v. Lydic*, 664 S.W.2d 941, 944 (Ky. App. 1983) (Miller, J., dissenting) (citing KRS 436.070 for the proposition "cohabitation was condemned as illegal under a criminal statute then in existence.").

Thus, it strains credulity for the majority to predicate its discovery of a clear legislative intent to permit unmarried couples to jointly file for adoption

18

on the General Assembly's presumed awareness that the singular may include the plural under KRS 446.020(1) when it must also be presumed the legislature was equally aware that cohabitation was considered a criminal offense at that time under KRS 436.070. In addition to the then-extant criminal prohibition of cohabitation, the General Assembly would have also presumably accounted for longstanding Kentucky public policy which has steadfastly favored marriage and uniformly refused to extend the incidents of marriage to informal relationships in other contexts. *Jones*, 353 S.W.2d at 209; *Yett's Adm'r*, 88 S.W.2d at 963; *Nall*, 33 S.W.2d at 635; *McDonald*, 51 Ky. at 286; *Pinkhasov v. Petocz*, 331 S.W.3d 285, 296-97 (Ky. App. 2011) ("[R]egardless of how closely a relationship may resemble a legally valid civil marriage, Kentucky courts will not otherwise recognize such rights and obligations, and thereby reinstitute 'by judicial fiat common law marriage which by expressed public policy is not recognized.'"); Louise Everett Graham & James E. Keller, 15 *Ky. Prac. Domestic Relations L.* § 2:4 (2024) ("In cohabitation, unlike marriage, there are no automatic incidents of the relationship."). Considered against the weight of the foregoing authority, the majority's reliance on KRS 446.020(1) as the sole barometer for legislative intent is "a weak reed to shore up a leaky boat." *Atl. Painting & Contracting Inc. v. Nashville Bridge Co.*, 670 S.W.2d 841, 847 (Ky. 1984).

To be sure, societal attitudes toward unmarried relationships may have changed dramatically in the decades following the enactment of KRS 199.470, but it is not the function of this Court to revise, update, or amend statutes to

19

coincide with our subjective discernment of contemporary mores. *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). In *Wisconsin Central*, the Supreme Court aptly explained the nature of legal texts in relation to the proper scope of judicial interpretation:

> Written laws are meant to be understood and lived by. If a fog of uncertainty surrounded them, if their meaning could shift with the latest judicial whim, the point of reducing them to writing would be lost. That is why it's a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law.

*Id.* (internal citation omitted). This reasoning applies with equal force to the present appeal.

Here, the majority's expansive interpretation of KRS 199.470(1) manufactures the very "fog of uncertainty" which the consistent and predictable application of our well-established rules of interpretation was designed to prevent. I cannot discern any limiting principle in the majority's analysis that would meaningfully restrict the scope of its holding to the undefined category of "unmarried couples." By the majority's logic, any conceivable unit of two or more persons such as friends, roommates, acquaintances, business partners, or even rote strangers may jointly file for adoption. Moreover, the majority's recognition of the right of "any persons" to jointly file plainly exceeds this Court's authority by imbuing non-traditional and other informal living arrangements with a legal imprimatur which the

20

legislature has not seen fit to bestow. While a wise proverb teaches "it takes a village to raise a child," Kentucky law simply does not extend this neighborly ideal to the right of joint adoption.

Further, the majority's reliance on *Krieger v. Garvin*, 584 S.W.3d 727 (Ky. 2019), as an interpretative guide is misplaced and inapt. *Krieger* has no bearing on the present matter because the law of child custody and adoption "address different situations and perform different functions[.]" Herma H. Kay, *Adoption in the Conflict of Laws: The UAA, Not the UCCJA, is the Answer*, 84 Cal. L. Rev. 703, 728 (1996). Generally, in a custody situation, the natural parents' "relationship to the child remains intact" and

> [t]he custody order commits the court to a supervision of the parent-child relationship that does not end until the child attains majority or becomes emancipated. Frequent adjustments may be required; hence, the order remains open to modification as circumstances change. In the adoption situation, by contrast, the court is called upon to sever the parental ties created by birth and to replace them with legal ties that will serve as the foundation for a new parent-child relationship. The court acts, then withdraws, leaving the newly formed family to function as it sees fit, subject to the same generalized standards that apply to all families.

*Id.* Kentucky precedents resonate with this distinction and require strict compliance with adoption statutes "to protect the rights of the natural parents." *Day*, 937 S.W.2d at 719.

Moreover, our predecessor Court has specifically rejected a comparative approach to the determination of rights under the law of adoption declaring, "no analogy has been allowed to have effect beyond the terms and purpose of the statute authorizing adoption." *Villier*, 182 S.W. at 872. In other words, the

21

proper construction of adoption law must be solely "based upon the statute, and not upon any common-law or civil law status." *Id.* at 871. For example, "courts have refused to recognize 'de facto' adoptions even when there was no doubt that the parties had always regarded themselves as parent and child." Norvie L. Lay & James R. Merritt, 1 *Ky. Prac. Prob. Prac. & Proc.* § 21 (2023).

In addition to the fundamental distinction between adoption and custody as a general matter, the text of the specific statute at issue in *Krieger* differs critically from KRS 199.470. The majority refers to the phrase "unless the context requires otherwise" in KRS 403.270(1), which *Krieger* held to allow family courts to exercise discretion in determining who qualifies as a de facto custodian and extends this reasoning to KRS 199.470. *Ante*, at 5, 7. Notably, however, the phrase "unless the context requires otherwise" does not appear in KRS 199.470. Again, in my estimation, the majority has simply read the above-cited language from KRS 403.270(1) into KRS 199.470 in contravention of our holding in *Day*. 937 S.W.2d at 719 ("[W]hat is not found in the statute is a matter for the legislature to supply[.]"). Contrary to the majority, I perceive nothing in the plain language of KRS 199.470 which authorizes a family court to exercise discretion in determining whether two unmarried persons are qualified to jointly file for adoption.

Additionally, I cannot agree with the majority's characterization of 922 KAR 1:350 §§ 2(4), 3(4) as leading to an absurd result simply because the Cabinet failed to anticipate this Court's interpretation of KRS 199.470 as a matter of first impression. The absurdity doctrine permits a court to depart

22

from the plain language of a legal text where "the absurdity [is] so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930).

Putting aside for the moment any disagreement concerning the proper interpretation of KRS 199.470, resort to the absurdity rule is unwarranted here because a court "is not bound by an erroneous administrative interpretation no matter how long standing such an interpretation." *Camera Ctr., Inc. v. Revenue Cabinet*, 34 S.W.3d 39, 41 (Ky. 2000). In my view, an agency's interpretation of the law cannot be deemed absurd merely because it does not happen to coincide with the legal construction endorsed by a majority of this Court.

Because the majority's analysis lacks a firm basis in the statutory text and legislative intent, I cannot join the Court's holding which permits, for the first time in Kentucky, unmarried couples to jointly file for adoption.[10] "Without regard to whether this new policy now legislated by this court is a good or a bad policy, the proposed change is a matter which should have been left to the General Assembly." *Edwardson v. Edwardson*, 798 S.W.2d 941, 947 (Ky. 1990) (Vance, J., dissenting). Policymaking by judicial fiat "undermine[s] the separation of powers which is provided by our constitution" and it is my firm belief this Court should resist the temptation "to arrogate unto itself the

---

[10] I am not unaware that, from time to time, certain individuals have evaded the strict application of Kentucky's adoption laws through the dereliction of family courts who may have "let down [their] guard." *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 836 (Ky. App. 2008). However, to my knowledge, no Kentucky appellate court has sanctioned such procedures.

duty not only to interpret the law, but to enact it as well." *Id.* Therefore, I dissent and would affirm the decision of the Court of Appeals.


COUNSEL FOR APPELLANTS:

Marsha Taylor


COUNSEL FOR APPELLEE:

LeeAnne Edmonds Applegate
Cabinet for Health & Family Services